### JANESICK v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.
    Municipal zoning ordinances are a valid exercise of police power when related to the public health, morals, safety or general welfare, but they must be reasonable in their application.

2. SAME—ZONING ORDINANCES—INVALIDITY—BURDEN OF PROOF.
    One who seeks to have a municipal zoning ordinance declared invalid has the burden of affirmatively proving by competent evidence that the ordinance is an arbitrary and unreasonable restriction upon the use of his property.

3. SAME—ZONING—BUFFER AREAS.
    So-called buffer areas resulting when a city is zoned cannot be drawn arbitrarily without regard to the existing characteristics of the area itself or without regard to the reasonable rights of the owners.

4. SAME—ZONING—HARDSHIPS.
    The rights of the general public must be weighed against the right of the individual landowner to use his property to the greatest advantage in every case of hardship under a municipal zoning ordinance.

5. SAME—ZONING—DEPRECIATION IN VALUE.
    The extent to which property values are diminished by a municipal zoning ordinance must be given consideration in determining whether the invasion of property rights under a purported

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3] 58 Am Jur, Zoning §§ 14, 18, 21, 22.
[4, 5] 58 Am Jur, Zoning §§ 139, 140.
[6, 7] 58 Am Jur, Zoning §§ 141, 142.

police power is unreasonable and confiscatory especially when depreciation in value by the ordinance destroys most of the value of the property involved.

6. SAME—ZONING—RESIDENCES—MANUFACTURING—BUFFER AREA.
   Fact that all financial institutions which were approached and had money to lend for residential construction declined to do so because plaintiffs' 6-acre rectangular tract was found unsuitable for homesites, that on 2 sides the adjoining property was zoned for residential use and other 2 sides to light manufacturing uses, 1 side being presently devoted to an airport, and that if it could be used for manufacturing purposes the property would be worth several times its present assessed and market values should be considered in determining the reasonableness of municipal zoning ordinance limiting use of the property to residential use only (Detroit Zoning Ordinances 171–D, 180–E).

7. SAME—ZONING—RESIDENCES—MANUFACTURING—BUFFER AREA.
   No substantial relationship is found between residential restriction placed by zoning ordinance upon use of plaintiffs' 6-acre rectangular-shaped property and the public health, morals, safety or general welfare, where it is located between manufacturing and residential areas and latter, already characterized as undesirable for residences, will be changed in slight degree if light manufacturing is permitted on plaintiffs' property, hence, ordinances are declared invalid as applied to plaintiffs' property, since they are unreasonable and confiscatory (Detroit Zoning Ordinances 171–D, 180–E).

Appeal from Wayne; Murphy (George B.), J. Submitted April 15, 1953. (Docket No. 42, Calendar No. 45,788.) Decided October 5, 1953.

Bill by Anthony Janesick and wife against City of Detroit for declaratory decree that zoning ordinances are void as applied to plaintiffs' property. Decree for plaintiffs. Defendant appeals. Affirmed.

*John G. Cross,* for plaintiffs.

*Paul T. Dwyer,* Corporation Counsel, and *Arthur L. Barkey,* Assistant Corporation Counsel, for defendant.

Adams, J. On November 7, 1951, plaintiffs and appellees herein, Anthony and Johanna Janesick, filed a bill in chancery seeking to have zoning ordinances 171–D and 180–E of the city of Detroit declared void insofar as they purport to limit the use of certain land owned by plaintiffs to residential purposes. They alleged that the ordinances, as applied to their property, were an arbitrary and unreasonable exercise of the city's police power and confiscatory, and for those reasons should be declared invalid as violating the provisions of the Michigan Constitution (1908), art 2, § 16, and the Fourteenth Amendment to the Constitution of the United States. A trial was had and at its conclusion the trial court held the ordinances invalid as applied to plaintiffs' property. From that determination and the decree entered pursuant thereto, the city of Detroit, defendant and appellant herein, takes this appeal.

Plaintiffs are the owners of lot 16 of Rivard Farm subdivision in the city of Detroit. The lot has an area of approximately 6 acres. There are 2 dwellings on the property, one about 160 years old. That part of the lot fronting on French Road is zoned R 2 (2-family dwellings). The remaining portion is zoned R 1 (1-family dwellings). The parcel extends along French Road for a distance of 613.10 feet. Across the road is the Detroit city airport which is zoned ML (light manufacturing). To the south is a right-of-way of the Pennsylvania Railroad and still farther to the south, land occupied by the Borg-Warner plant. Both parcels are zoned ML.

The westerly and northerly sides of the lot are adjacent to residential property which is zoned for that use. Summarized then, we are here concerned with a rectangular parcel of land with 2 sides adjacent to areas zoned for residential use and the remaining 2 sides adjacent to areas zoned for light manufacturing uses.

The plaintiffs purchased the property on March 24, 1950, for $16,000 intending to develop it as a residential area. Shortly after the purchase, a proposed plat of the land was prepared and submitted to a number of builders for their consideration. Several were interested and checked both the property and the possibility of obtaining finances for the construction of homes. All who made inquiry discovered that no financial institutions would accept mortgages on the property because of its location and proximity to the airport and manufacturing plants. As a result, no builder was interested in going ahead with plans for the construction of residential dwellings on the property.

Plaintiffs then formally requested the city of Detroit to rezone the property but, upon the recommendation of the city plan commission, their application was denied. More than a year and a half after their acquisition of the property, plaintiffs brought this suit to set aside the limitations imposed by the zoning ordinance as it applied to their property.

In addition to testimony showing lack of available financing for the construction of homes, it appears that most of the homes in the residential area immediately adjacent on the north and west sides of plaintiffs' property were built prior to the development of the airport and the nearby manufacturing plant. In the last 20 years, no new homes have been built in the area. It further appears that as a result of the operation of the airport and the manufacturing plant, there is more than the normal amount of noise in the locality and considerable smoke and dust in the air.

Some of the witnesses described plaintiffs' property as so-called "dead land;" that is, property not put to a proper economic use; that it was idle land producing little or no income; that the area was

"going down" from a residential standpoint, and that it had no residential value to the average buyer. Further, that it constituted a tax collection problem and that on at least 1 occasion the property had been sold for delinquent taxes and later redeemed. The secretary of the city plan commission conceded that there were obvious handicaps to the development of the property and that he considered it "problem property." The secretary of the board of zoning appeals likewise conceded that it was "problem property."

· The property is now valued for assessment purposes at $9,220, but uncontradicted testimony was given to the effect that it would have a probable market value of at least $60,000 if light manufacturing uses were permitted. On the other hand, several residents of the area north and west of the property testified in behalf of the city that if light manufacturing were permitted on lot 16, it would increase traffic on the streets, make parking difficult, increase noise and dust, and in general make the area less desirable from a residential standpoint.

The sole question to be determined on this appeal is whether or not the city zoning ordinance, as applied to plaintiffs' property, is a reasonable exercise of police power. This Court has had frequent occasion to pass upon zoning ordinances. General principles have evolved from our decisions and have been adhered to, but the application of those principles to particular cases is sometimes difficult. We have held that zoning ordinances, when related to the public health, morals, safety or general welfare, are a valid exercise of police power, but that such ordinances must be reasonable in their application. One who seeks to have an ordinance declared invalid has the burden of affirmatively proving by competent evidence that the ordinance is an arbitrary and unreasonable restriction upon the use of his property.

*Hammond* v. *Bloomfield Hills Building Inspector,* 331 Mich 551.

Defendant insists that the 2 primary factors that motivate plaintiffs in their effort to remove the residential zoning restrictions from their property are the present lack of available financing for construction purposes and the potential increase in the market value of the property if light manufacturing uses were permitted. Such matters, the city says, should be given little or no consideration in a determination of the reasonableness of the ordinances. It is their contention that the public welfare outweighs possible injury to the individual and that any zoning ordinance is apt to bring about a reduced valuation to the owner of property along the division line between an area zoned for residential purposes and one zoned for commercial and manufacturing purposes.

It is to be conceded that the zoning of any city will result in so-called "buffer" areas, but it does not follow that such lines of division can be arbitrarily drawn by the zoning authorities without regard to the existing characteristics of the area itself or without regard to the reasonable rights of the owners. In every case of hardship the rights of the general public must be weighed against the right of the individual land owner to use his property to the greatest advantage. Significant but not conclusive factors in such a determination are depreciation and loss of use by the property owners as a result of the application of the ordinance.

" 'In determining whether the invasion of property rights under a purported police power, is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance must be given consideration.' " *Reschke* v. *Village of Winnetka,* 363 Ill 478 (2 NE2d

718) as quoted with approval in *Ervin Acceptance Co.* v. *City of Ann Arbor,* 322 Mich 404, 410.

: "While depreciation in value is not a definite yardstick by which to measure the reasonableness of a township zoning ordinance, the Supreme Court will give it consideration, especially when the ordinance destroys most of the value of the property involved." *Ritenour* v. *Township of Dearborn* (syllabus), 326 Mich 242.

Plaintiffs' inability to obtain mortgage money for the development of their property resulted from the fact that all financial institutions who were approached and who had money to loan for residential construction found the property unsuitable for homesites. Testimony that the property would be worth several times its present assessed value as well as its present market value if it could be used for manufacturing purposes was likewise indicative of the fact that investors, familiar with the area, did not find the property suitable for residential purposes. Both circumstances should be considered in a determination of the reasonableness of the zoning ordinance as applied to plaintiffs' property.

As previously stated, the city has caused its own adjacent property, the city airport, to be zoned for light manufacturing purposes. While it is true that the airport was in existence when the zoning ordinance was adopted, it is likewise true that the plaintiffs' property was at the same time considered "problem property." Vacant in large part, it was producing little or no income for the owner and taxes were delinquent. Because of its location it was not suitable or adaptable for residential use. As testified at the trial, it was not being put to its proper economic purposes, a fact which should have been apparent to the city at that time.

"To .classify, this property for single residential purposes seems to us to work too great a hardship on the plaintiff and serves no useful purpose for the general welfare of the community.  The parcel itself would be well adapted for residential use, being high, dry, level and sandy, with almost every modern convenience already established, were it not for its location.  In the last analysis we must consider whether the zoning of this particular triangle advances the public health, safety and general welfare of the people." *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31, 36.

We find no substantial relationship between the restriction upon the use of plaintiffs' property and the public health, morals, safety or general welfare. While residents of the area immediately adjacent do not approve of a light manufacturing use of plaintiffs' property because of a probable increase in traffic, noise, smoke and dust, the record indicates that the area is already characterized as an undesirable residential area because of the existence of those conditions in larger degree than is normally found in residential areas.  The character of the area will be changed in slight degree if light manufacturing is permitted on plaintiffs' property.

The limitations imposed by the ordinance upon the use of plaintiffs' property prevent it from being utilized for purposes consistent with its location. If such restrictions are permitted to continue, the property will, for all practical purposes, be of little use to anyone.  It will remain "problem property" contributing little or nothing to the economy of the city.  On the other hand, it does not clearly appear that the public health, morals, safety or welfare are materially enhanced by such use restrictions.

Under all the circumstances, we are of the opinion that the use limitations imposed upon the plaintiffs' property by virtue of the city's zoning ordinances

are unreasonable and confiscatory and therefore invalid. A decree will enter accordingly. Costs to appellees.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.