## FRENDO *v.* TOWNSHIP OF SOUTHFIELD.
## PERRY *v.* SAME.

1. TOWNSHIPS—ZONING—RESIDENCES—EQUITY.

   It is the function of a court in a zoning case to balance the conflicting equities and reach a fair working result, realizing that any relief given from township residential zoning provisions of property largely surrounded by commercial and industrial properties will to some extent harm home owners in the vicinity and that a denial of relief will adversely affect the plaintiffs by requiring them to pay taxes on lots that are confiscated by limitation to use for single-family residences.

2. APPEAL AND ERROR—HEARING OF ZONING CASE.

   The Supreme Court hears a zoning case *de novo* based on the record.

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning § 229 *et seq.*
[2]  58 Am Jur, Zoning § 255.
[3]  58 Am Jur, Zoning §§ 21, 22.

3. Townships—Zoning—Residences.

    Township zoning ordinance which limited the use of 18 lots, including 6 owned by plaintiffs, to single-family residence use *held,* unreasonable, confiscatory and void, where 92% of the similarly situated frontage for 6 miles on main artery of travel is devoted to commercial or industrial uses, there is no market for residences on the thoroughfare and noise and a heavy volume of traffic make it undesirable and unsuitable for any residential use.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 15, 1957. (Docket Nos. 59, 60, Calendar Nos. 46,916, 46,917.) Decided October 7, 1957.

Bill by Paul Frendo, Joseph Frendo and Beatrice Frendo against the Township of Southfield and its township board, a municipal corporation, to have zoning ordinance declared void as to their property. Similar action by Vene G. Perry and Florence B. Perry. Cases consolidated for trial and appeal. Bills dismissed. Plaintiffs appeal. Reversed and remanded for entry of decree for plaintiffs.

*McIntosh & Finley,* for plaintiffs.

*Dell & Heber,* for defendants.

Voelker, J. These consolidated suits were started for the purpose of having the residential zoning ordinance of defendant township decreed unconstitutional and void, so far as it affects plaintiffs' 6 vacant lots, and to enjoin the township from enforcing its ordinance as to plaintiffs' property and to further enjoin the township from classifying said lots other than commercial or industrial. From a decree below denying relief and dismissing their bills of complaint, plaintiffs appeal.

    At the hearing below it appeared that the 6 lots in question are part of 18 lots in a row (15 of them vacant) fronting on Eight Mile road and zoned as

residential; that of the 6 types of residential zoning in the township, these lots, zoned "R2," were in the second to the lowest classification; that they were by this ordinance restricted to single-family dwellings of limited height; that of the Eight Mile road frontage in the defendant township but 8% is zoned residential and the balance of 92% is either industrial or commercial; that all 18 lots are presently unimproved except for 1 fenced-in ranch-type house occupying portions of lots 1, 2 and 3; that to the west of the 6 lots in question there are 7 vacant lots, beyond which there are establishments of industrial nature and so zoned; that immediately east of the parcel are 5 vacant lots, except for 1 house, beyond which, according to the testimony, lie 18 or more ranch-type homes (although there are only 16 lots), the fronts of which face on Westhaven avenue on the north and the backyards of which extend back to Eight Mile road; that these homes are substantial and well kept up and of the average value of from 15 to 18 thousand dollars; that the 8% of residential zoning touching Eight Mile road continues uninterrupted for 1/2 mile, approximately half of which is presently occupied and used for residential purposes but with only 1 house fronting on Eight Mile road; and that the streets running north off of Eight Mile road are almost entirely occupied by residences. Across Eight Mile road lies the boundary of the city of Detroit, the immediate area being occupied by an Edison plant and various commercial enterprises and zoned commercial.

It should also be noted that 4 of the lots were purchased by some of the plaintiffs before the adoption of the zoning ordinance in 1946, and the remaining 2 after; and that all 18 lots, including these 6, were, by recorded restrictions privately imposed in 1940 by the original owner limited to use "for residential or business purposes."

Plaintiffs produced a traffic engineer employed by the State highway commissioner who testified that Eight Mile road is an increasingly busy highway; that during the past 5 years traffic had increased by approximately 1/3; that the latest traffic count showed that during an average 24-hour period 29,-000 motor vehicles used it, travelling both ways; that he estimated 1/5 of these were commercial; that the future traffic trend on that highway was definitely increasing in volume; and that plans were afoot to further widen Eight Mile road, which would further increase the volume of traffic. Plaintiffs also called 3 real-estate men.

Witness Murphy testified that he had been in the real-estate business for 39 years and was familiar with the area and the lots in question; that the ranch-type dwelling east of the lots in question is the only home fronting on Eight Mile road in the township, possibly excepting 1 or 2 old farm homes; that there is no demand for residential homes on Eight Mile road; that in his opinion the property in question was not suitable for residential purposes; that there is a demand for such property for industrial or commercial purposes; that the area is now in fact established as business rather than residential.

The next witness, Stephens, had approximately 25 years experience and was acquainted with the area and the lots in question. He testified that these lots and all other lots in the subdivision fronting on Eight Mile road were vacant except for the 1 lone dwelling to the east; that on Eight Mile road in the entire township, except for this lone house, there "might be a few old residential leftovers;" that he knew of only half a dozen such old houses in 6 miles and nothing new. He further testified that the lots were "unsuitable for residential purposes" but were "very marketable as business property;" that the "noise problem" on Eight Mile road is at a "high state;"

that the Federal housing administration would not grant a normal commitment for a mortgage on these parcels; that the area is a fast-growing commercial and industrial area "and is stagnant as confined to residential use." On cross-examination he testified that it tends to decrease the value of residential property to have industrial property immediately adjacent to it; that the corresponding effect of commercial development would depend upon the type of user, which he conceded could be detrimental.

The last witness, Schuett, had been in the real-estate business in the area for 12 years and was familiar with it. He testified that since 1942 or 1943 he had owned and still owned 2 lots next to the Frendos'; that during that time he had never received an offer to purchase these lots for residential purposes; and that "I definitely do not think that these parcels under discussion should be classified as residential. My belief is that there is a demand for business use." At the conclusion of the plaintiffs' case the defendants elected to put in no testimony and rested. As noted, the court denied any relief and dismissed the bill and this appeal has resulted.

In an opinion filed in the case the court below expressed the feeling that the plaintiffs had not established their case by a fair preponderance of the evidence and had not sustained the burden of proof. We find ourselves unable to agree with the court unless we are to conclude that he did not believe the uncontradicted testimony of the plaintiffs' witnesses. On this score, however, the court stated in its opinion: "I was very much impressed with the testimony of Mr. Murphy and Mr. Stephens. Mr. Stephens was one of the fairest witnesses I have had in my court in a long time." This is rather inconsistent with any assumption by us that the court might not have believed these witnesses or that we should not.

And if he believed these named witnesses then he could scarcely have ignored those portions of the testimony of plaintiffs' other witnesses who testified similarly.

Possibly the greatest item of comfort afforded defendants by any of plaintiffs' witnesses was the concession by one of them that a "de-zoning" of these lots to industrial use would be detrimental to the surrounding residences and that a commercial use could likewise be detrimental, subject to the type of user. We think this is a proposition so patent in all zoning cases of this kind that a judge can almost take judicial notice of the fact. Few decisions in any such zoning cases fail to harm and displease someone; our job is try to balance the conflicting equities and try to reach a fair working result consistent with the dilemma before us. We grant, then, that any relief given here to the plaintiffs will to some extent harm home owners in the vicinity. Yet a denial of relief will most certainly affect the plaintiffs; they will be left to pay taxes on lots which we believe the proofs plainly show are entirely unusable for the purposes to which by this ordinance they are restricted; under this testimony it is inconceivable that any person in his right mind would want to build and occupy a single-family dwelling there; yet about the only way the owners could apparently get any benefit from these lots would be for them to build a series of single-family dwellings and live in them themselves. This skates pretty close to confiscation.

There are no east-west streets (except for Melrose avenue lying 5 blocks north of Eight Mile road) in Baseline Estates subdivision and all the houses face east and west on 3 north-south streets, while almost all the houses in Westhampton subdivision (which abuts Baseline to the east), face north and south because that subdivision, unlike Baseline, is oriented to 8 east-west streets.

The 16 residential lots in Westhampton subdivision with homes fronting on Westhaven avenue and backing on Eight Mile road (along with the lone fenced-in house on lots 1, 2 and 3 in Baseline subdivision) constitute the entire actual modern residential development in the township in any manner touching on Eight Mile road. All the rest on Eight Mile is industrial or commercial.

A look at the use and zoning maps (exhibits 8 and 8a) of section 35 (in which the subject lots are situated) and section 36 to the east readily reveals why residences have been built in Westhampton subdivision between Westhaven avenue and Eight Mile road. Westhaven avenue permits the owners there to back up their homes to Eight Mile road. However that avenue stops east of our present lots and there is no corresponding "escape" road just north of our lots to permit the happy solution found by the fortunate home owners fronting on Westhaven. The backing up solution is out. Instead these lots are marooned in a sort of twilight zone or "no man's land" amidst residential owners who can escape the full brunt of Eight Mile road, a total industrial use immediately to the west—while teeming Detroit lies across the street. The only possible way out might be up—but the present zoning ordinance prevents even this.

We hear the case *de novo,* based on the record (*Warner* v. *City of Muskegon,* 344 Mich 408), from which record it appears that these lots were not purchased in the expectation of getting the land rezoned (see *Anderson* v. *City of Holland,* 344 Mich 706), and that the noise and heavy volume of traffic make the lots both undesirable and unsuitable for single-family residence (see *Bassey* v. *City of Huntington Woods,* 344 Mich 701) or indeed for any type of residence, that the area is a kind of island in an unreasonable buffer area—2 and a fraction blocks of empty

lots zoned for residential purposes out of 6 miles of commercial and industrial user, and so zoned (see *Janesick* v. *City of Detroit*, 337 Mich 549), upon which the value as residential property has been greatly depreciated (the *Janesick* and *Bassey Cases, supra*), ineligibility for Federal financing for residential building (*Janesick Case, supra*), and, finally, no market for the lots for the purposes for which they are zoned (*Long* v. *City of Highland Park*, 329 Mich 146 and the *Bassey Case, supra*, p 705).

The trouble out there on Eight Mile road is that the area fronting it is being engulfed by the relentless tidal wave of city "flowing," as Dean Acheson recently colorfully wrote of another urban area in another context, in *The Reporter* for September 19, 1957: "flowing over farms, woods, and streams like lava from an urban Vesuvius." This is nobody's fault and it is everybody's. No man can stem it; time will not be halted or the clock pushed back either by kings or township zoning ordinances.

We hold that the residential zoning ordinance here is unreasonable, confiscatory and invalid as it applies to these lots and that as to said lots the defendants should be restrained from enforcing such ordinance and further restrained from treating or classifying them more strictly than commercial, as that term is defined in the existing ordinance. Any industrial user appears to be forbidden by the recorded restrictions imposed in 1940 by the original owner. The decision below is reversed and the cause remanded so that the chancellor may enter a decree in favor of the plaintiffs not inconsistent with this opinion, costs to the prevailing parties.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.