SPANICH *v.* CITY OF LIVONIA.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.

A municipal corporation's exercise of the police power by enactment of a zoning ordinance is limited to the regulation of the use of property affected thereby, not confiscation thereof, and the regulation must bear a direct and substantial relation to the objectives of the police power by the preservation of the public health, safety, morals and general welfare of the community as a whole and, as to individual property, must not be arbitrary, unreasonable or discriminatory.

2. SAME—ZONING ORDINANCES—PRESUMPTION OF VALIDITY.

A municipal zoning ordinance will be presumed to be valid.

3. SAME—ZONING ORDINANCES—BURDEN OF PROOF OF INVALIDITY.

A party claiming a municipal zoning ordinance is invalid has the burden of proving the invalidity.

4. SAME—AMENDMENT OF ZONING ORDINANCE—BOUNDARY OF ZONE THROUGH TRACT—RESIDENTIAL USE OF LIGHT INDUSTRY AREA.

Amendment of zoning ordinance whereby the rear portion, remote from road, consisting of 500' of plaintiff's 330' x 1,300' tract of land was zoned for residential use, rather than continuance of entire tract for light industrial use, *held*, invalid, since it was not in direct and substantial furtherance of police power objectives in that it became a landlocked piece of land, quite unsuited to use for residential purposes in view of the cost of developing it for such purposes, the rather limited use of nearby areas for residential purposes and proximity of both light and heavy industry and commercial uses of property in. newly-created city.

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning §§ 14–24.
[2] 58 Am Jur, Zoning § 16.
[5] 58 Am Jur, Zoning § 18.
[6] 58 Am Jur, Zoning § 21.
[7] 58 Am Jur, Zoning § 28.
[9] 39 Am Jur, Parties § 72.
[10] 39 Am Jur, Parties § 79.

5. SAME—ZONING—POLICE POWER.

A municipal government's power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use is not unlimited but such restriction must bear a substantial relation to the public health, safety, morals, or general welfare.

6. SAME—ZONING ORDINANCES—RESIDENTIAL USE.

A zoning ordinance which zones land for residential uses is invalid, where the land is unfit for such purpose.

7. SAME—ZONING—RESIDENTIAL USE—ENHANCEMENT OF VALUE.

A desire to enhance the value of other property in the immediate neighborhood of property zoned for residence purposes in a municipality may not be the sole factor impelling a rezoning.

8. SAME—ZONING—VALUE—RESIDENTIAL USE—LIGHT INDUSTRY.

Rezoning of plaintiff's property by newly-formed city whereby plaintiff's 330' x 1,300' tract, zoned for light industry was divided so that rear 500' were zoned for residential use, rendering it worthless, *held*, unreasonable, arbitrary and void as to such premises, and was not necessary to any general zoning plan of the city.

9. INJUNCTION — INTERVENTION — LACHES — DEFENSES UNAVAILABLE TO PRINCIPAL PARTIES.

Laches as a defense, which was not available to principal defendant, the city which had adopted an amendment to zoning ordinance that arbitrarily crossed rear 500' portion of plaintiff's 330' x 1,300' lot of record, zoning it for residential use and rendering it worthless, because not proved and abandoned, was also unavailable to intervenor homeowners in the neighborhood, since they came into the injunction suit in subordination to the main proceeding (CL 1948, § 612.11).

10. PARTIES—INTERVENTION—SUBORDINATION TO MAIN PROCEEDING.

Intervenors may not broaden the issues which were litigated between the principal parties as they must come into the action in subordination to the main proceeding (CL 1948, § 612.11).

11. MUNICIPAL CORPORATIONS—ZONING—SUPREME COURT—VALUE.

The Supreme Court does not sit as a superzoning commission and substitute its judgment for that of the legislative body of a municipal corporation charged with the duty and responsibility in the premises except in unusual circumstances but where record supports findings that the local agency's determination was arbitrary and rendered the property worth-

less by rezoning for residential use the rear 500' part of
light industrial tract 330' x 1,300', leaving it landlocked for
residential use, the rezoning was unconstitutional.

Appeal from Wayne; Culehan (Miles N.), J.  Sub-
mitted October 14, 1958.  (Docket No. 54, Calendar
No. 47,710.)  Decided January 12, 1959.

Bill by John I. Spanich against the City of Livonia,
a municipal corporation, to declare zoning ordinance
void as to his property and to enjoin enforcement
thereof.  Schoolcraft Manor Civic Association, a
Michigan nonprofit corporation, and various prop-
erty owners intervene as parties defendant.  Decree
for plaintiff.  Defendant city appeals.  Affirmed.

*George D. Haller,* for plaintiff.

*William N. Ponder* and *Rodney C. Kropf,* for de-
fendant City of Livonia.

Kavanagh, J.  The opinion of the trial court fol-
lows:

"This is an action brought by plaintiff to restrain
the city of Livonia from enforcing its zoning or-
dinance insofar as it applies to the industrial prop-
erty owned and used by plaintiff in a manufacturing
operation.

"The city of Livonia has run a zoning district
boundary line across plaintiff's lot of record so as
to cut off its rear or southerly portion, thereby
creating of this segment a small rectangle, 330 by
500 feet, limited to residential uses.  Under the zon-
ing which obtained prior to the city's action, all of
plaintiff's 330 by 1,300 foot parcel was classified
for light industrial uses, and it had been so used
since 1941 when this parcel was established as a
lot of record.  In that year also a factory building
was erected and a manufacturing enterprise started

on this lot, with the written consent of the township authorities.

"In November, 1945, plaintiff formed the intention of establishing a manufacturing business in the township. He searched for a parcel suitable for his plans and found that this one met his requirements as to size, location and other factors. He had counsel investigate the legal situation and was advised that this parcel had been separated out of farm acreage prior to any township zoning, and had been devoted to industrial uses with the approval of the township authorities. He was also advised of the further fact that under a township ordinance, then in process of publication, this entire lot of record, plus some additional land adjoining to the west, was zoned M-1 or light industrial in classification. Relying on this history and advice, plaintiff bought the parcel. The township ordinance referred to became effective December 6, 1945. Subsequent to his purchase plaintiff erected a second manufacturing building on the lot, and this building is a modern and attractive edifice.

"In 1950 the township became the city of Livonia. The new municipality continued the prior zoning in effect. Later the growth of the community called for updating the zoning and in early 1953, some 7 years after plaintiff's purchase and 11 years after the start of industrial uses of this lot of record, the first city zoning ordinance became effective. Under this enactment a zoning district boundary line was run across plaintiff's rectangular parcel so as to cut off the south 500 feet, leaving the north 800 feet classified as high industrial but limiting the smaller segment to residential uses.

"In 1956 plaintiff's business required another structure and he requested a building permit, which was refused because of the classification of the rear segment, on part of which the proposed structure would stand. He immediately petitioned the planning commission for a restoration to this segment of its prior M-1 status. The commission, while stat-

ing in writing that it was 'in sympathy with the petitioner's problem,' denied his request for the sole reason that it would 'injure the surrounding land as desirable residential land.'

"This court is aware that each zoning case is governed by its particular facts, and therefore will deal with the situation here in some detail. As shown by the evidence, which included maps, charts and drawings, plaintiff's lot of record consists of a rectangle 330 feet wide by 1,300 feet deep, including 10 acres, abutting on the south side of Five Mile road, in the NW 1/4 of section 23 in Livonia. This section is bounded by Five Mile road on the north, Middle Belt road on the east, Schoolcraft road on the south, and Merriman road on the west. In the NW 1/4 of the section, between Merriman on the west and Henry Ruff on the east, a half-mile stretch in which plaintiff's land is located, there is only 1 north-south road (Bainbridge) entering on Five Mile. On the opposite side of Five Mile, in this same stretch, there are no north-south roads at all. In this NW quarter section there is an almost complete lack of other streets and roads. There is Lyndon, a lane about 800 feet long running east from Merriman along the quarter line, to connect with the southern terminus of Bainbridge. There is also Flamingo, a north-south street which begins on the quarter line and runs about 2,000 feet in the eastern part of the quarter section, with 2 very short deadend spurs striking out from it, and a short base on the quarter line, which does not even connect with Lyndon.

"A rather important fact is that there is absolutely no means of access between plaintiff's rear segment, so restricted to residential uses, and any of the existing roads in any direction. This rear segment is surrounded on all sides by lands privately owned, and occupied for business or residential uses. To extend a public road or street to this segment would necessitate buying or condemning land for a right-of-way, which might also involve the acquisi-

tion and removal of structures thereon. Every other parcel in the NW 1/4 of this section abuts on an existing street, in which there are sewers and water lines, but this rear segment of plaintiff's parcel is absolutely landlocked, and at a considerable distance from sewers and water lines.

"With regard to existing uses of land, the court finds this to be the situation. Opposite the southeast corner of section 23 lies the mammoth plant of the racetrack and grounds of the Michigan Racing Association; with its tremendous traffic and parking situations, its noise and night glare (during night racing), it unquestionably impinges substantially upon the entire southeastern area of the section. Also immediately to the south of section 23 lies a section which is more than 80% zoned to M-2, or heavy industry; and clear across this section, in its northern half, stretches the largest food warehouse in the world.

"Within section 23 itself, or abutting it on its boundary roads, the court finds the following circumstances as to zoning and existing character of use. All 4 boundary roads are now substantially zoned to commercial uses, and particularly at the intersections there is extensive commercial use in existence. Only a year before this case was tried, a large tract of land on Merriman (the west boundary of the section) and only 1/4 mile to the south thereof, was rezoned by the city for commercial uses from residential. In the C-2 districts located at 3 of the corners of the section, the Livonia zoning permits hotels, apartments, rooming houses, stores, offices, public utility buildings, drive-in restaurants, used-car lots, produce stands, small merchandise factories, laundry and dry cleaning pickup stations, gasoline stations and storage garages. One such C-2 district runs east from Merriman all the way past plaintiff's premises, on the north side of Five Mile road.

"Even more important in influencing the court's decision is the fact that immediately west of and adjoining plaintiff's land is an area zoned to in-

dustrial uses, on which there are located a number of enterprises which would be deleterious to any residential uses of the rear of plaintiff's lot. These include a cement block factory with extensive open air stock-piling of concrete blocks and forms; a large transit-mix tower with several piles of sand, and similar supplies; and a heavy-duty truck repair station. The court had the benefit of a number of photographs which gave a very complete picture of many of the physical circumstances referred to.

"The court also finds it to be the fact that all the land within section 23 not classified as industrial or commercial is zoned R–U–F–B; that this means 'rural-urban-farm' with the cheaper or 'B' type of housing permitted. Under the ordinance such lands may be used for commercial dog kennels, chicken farms, rabbit breeding, plant and tree nurseries, greenhouses, truck gardens, produce stands; and owners may possess horses and cows in farm barns.

"Actually at the present time more than half of the area of the section is in open land (vacant fields or wood lots). In the entire southern half there is just 1 street, a half mile long, plus a circular offshoot therefrom, and 2 short cul-de-sacs. The residences on the mentioned street and cul-de-sacs, in the south half of the section, would, in the opinion of this court, be in nowise affected by a restoration of the M-1 classification of plaintiff's rear segment, because they are too far removed therefrom and are more closely located to the industrial and commercial uses mentioned above.

"Returning to the northwest quarter, in which plaintiff's premises are located, the western third thereof is presently occupied by a number of old, low-priced homes, interspersed with many ramshackle structures, such as woodsheds, chicken pens and the like. Along Bainbridge the homes are of a somewhat higher value, but these are not numerous and are scattered among vacant lots. Only along Flamingo and its offshoots are the homes of a more substantial character. On the east side of the quar-

ter there is open land and a wood lot. Along the north edge of the quarter, the zoning and uses are almost entirely industrial and commercial. Across Five Mile road is an extended area zoned C-2 and projected from [for?] this site is a shopping center including a bowling alley.

"Another pertinent factor, which the court finds to be established by the evidence, is that there are no nuisance elements whatever associated with plaintiff's operations. Plaintiff fabricates small electronic parts for government contracts and does some bonding operations. These processes include nothing in the way of noise, vibrations, smoke, fumes, odors, dirt, wastes, lights or glare; there is no outdoor storage of supplies or products; no appreciable truck traffic.

"Coming to the issues in this case, the court finds them reducible to 2. First, was it required as necessary to any general zoning plan of the community, and in direct and substantial furtherance of the public health, safety, morals and general welfare of the municipality considered as a social, economic and political entity, to amend the existing zoning so as to run a district boundary line across plaintiff's lot of record, and deprive a segment of it of its prior industrial uses?

"Second, does the action of the city, in the circumstances as found and related above, amount to a confiscation of property rights in violation of State and Federal constitutional provisions, as being arbitrary, unreasonable and discriminatory?

"This court has had in mind a number of pertinent principles which apply in zoning cases. It recognizes that a municipality has the power to zone, as included in the police power; and that, in the proper exercise of this power, it may regulate and restrict the uses of private land. See *Austin* v. *Older*, 283 Mich 667. But it is also of the opinion that such municipal action, to be considered constitutional, must observe certain limitations. First, the legislation may only 'regulate;' it may not 'take' under the

guise of regulation. See *Arverne Bay Construction Co.* v. *Thatcher,* 278 NY 222 (15 NE2d 587, 117 ALR 1110). Secondly, the regulation must bear a direct and substantial relation to the objectives of the police power (the preservation of the public health, safety, morals and general welfare of the community as a whole). See *Long* v. *City of Highland Park,* 329 Mich 146. Finally, the regulation, in its impact upon the individual property owner, must not be arbitrary, unreasonable or discriminatory. See *Hitchman* v. *Township of Oakland,* 329 Mich 331.

"The presumption is in favor of the validity of the zoning ordinance, but, as our Supreme Court pointed out in *Christiansen* v. *Hilber,* 282 Mich 403, once some evidence has been adduced to the contrary the presumption fades out. It still remains incumbent upon the plaintiff, however, to bear the burden of proof with respect to the invalidity of the ordinance. See *Northwood Properties Co.* v. *Royal Oak City Inspector,* 325 Mich 419.

"With respect to the first issue in this case, it is the conclusion of the court that the city's zoning action in this case was not necessary to any general zoning plan of the community, and was not in direct and substantial furtherance of the police power objectives. This case is sufficiently similar on its facts to be governed by the decision of the Federal supreme court in the *Nectow Case* (*Nectow* v. *City of Cambridge,* 277 US 183 [48 S Ct 447, 72 L ed 842]). There, as here, the city was drawing a boundary line between residential and industrial districts and, in so doing, cut off a strip of plaintiff's land, restricting it to residential and leaving the remainder to industrial. The court observed (pp 186, 187):

" 'When the zoning ordinance was enacted, plaintiff * * * was and still is the owner of a tract of land. * * * The effect of the zoning is to separate from the west end of plaintiff-in-error's tract a strip. * * * Under the ordinance * * * industry (is) * * * excluded from (this strip) * * * while the remainder of the tract is un-

restricted. * * * The master finds "that no practical use can be made of the land in question for residential purposes, because among other reasons * * * there would not be adequate return on the amount of any investment for the development of the property." '

"The court also points out that a mere jogging of the boundary line so as to go around the perimeter of plaintiff's tract, instead of cutting across it, would not create any detriment to the general zoning plan; and, at the same time, such a job would save the plaintiff from serious loss. It then adds this observation, which appears pertinent (p 188) :

" 'The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.'

"The situation in the case at bar seems to this court to afford an even stronger claim to relief, because apparently the *Nectow* line of demarcation was an original line, of which the stretch across plaintiff's land was a short detail; whereas in the case at bar the line was an amendment of prior zoning, and almost exclusively confined to plaintiff's land.

"This court is impressed by a Michigan case which appears to be controlling. This is *Ervin Acceptance Co.* v. *City of Ann Arbor,* 322 Mich 404. Although in that case the plaintiffs bought their lands already split by the line; although that line was only part of an extended boundary demarcation; and although the line had been drawn 20 years before, our Supreme Court ruled the Ann Arbor provision to be invalid because it split lots of record and restricted parts of them to uses for which they were not suited nor adaptable. It is to be noted that there, as here, the split-off segment was landlocked.

"This court listened to expert testimony offered by both sides on the question as to whether the Livonia ordinance restricted plaintiff's premises to uses for which it was not suitable nor adaptable. It is of opinion that the substance of this testimony was overwhelming, so far as producing a conviction in the court's mind, that this ordinance does so restrict this segment of plaintiff's land. In this connection it may be noted that counsel for the city conceded, in his brief, that 'plaintiff's expert testified that the land would be worthless for residential purposes' (the only use permitted under the regulation). Incidentally, this court, from a long experience, has great faith in the judgment of the expert who testified for plaintiff.

"As established by the expert testimony to which this court gave credence, it appears conclusively established that the restricted rear segment of plaintiff's lot of record is landlocked; that no subdivider would touch it because, among other reasons, it is too small for platting and subdividing profitably; that the extra expense created by the landlocked circumstances, in acquiring rights-of-way for access roads, and extending sewers and water lines before the plot itself was reached, would, taken in conjunction with the usual 'on the land' improvements, require an outlay that could never be recovered with any profit. The testimony further persuaded the court that the close proximity of this rear segment to the transit-mix tower with its stockpiling, the cement block plant with its outdoor storage, the truck repair station with its open air activities, and the existing and projected heavy commercial (C-2) at the Merriman-Five Mile intersection and extending eastward therefrom past plaintiff's land, would discourage the development of this segment for residential purposes. The *Nectow Case, supra,* noted that 'there would not be an adequate return on the amount of any investment for the development of the property' for residential uses. The court is convinced that this determinative factor is true to an

even greater degree in the instant case. In my opinion, under the circumstances here, a restriction of this segment to residential uses creates a parcel of 'dead land' even more definitely than was the situation in *Janesick* v. *City of Detroit*, 337 Mich 549. Our Court has very recently, in *Scholnick* v. *City of Bloomfield Hills*, 350 Mich 187, 196, reiterated that if land zoned for residential is unfit for residences the zoning ordinance is invalid. See *Fenner* v. *City of Muskegon*, 331 Mich 732.

"The court is persuaded that the case at bar is similar to many instances considered in prior Michigan decisions, such as *Grand Trunk W. R. Co.* v. *City of Detroit*, 326 Mich 387, where the Court remarked that no one with any common sense would build the kind of structures permitted by the ordinance. See, also, *McGivern* v. *City of Huntington Woods*, 343 Mich 413; *Ritenour* v. *Township of Dearborn*, 326 Mich 242; *Hering* v. *City of Royal Oak*, 326 Mich 232; and *Robyns* v. *City of Dearborn*, 341 Mich 495. More particularly, *Pere Marquette R. Co.* v. *Muskegon Township Board*, 298 Mich 31, where a quite similar rezoning was held invalid; and *Janesick* v. *City of Detroit*, 337 Mich 549, 556, where the Court found that a similar split of plaintiff's tract created 'dead land' and pointed out that there was 'no substantial relationship between the restriction upon the use of plaintiffs' property and the public health, morals, safety or general welfare.'

"Incidentally the court notes that it was apparent in this case that the only motive of the local authorities was a desire to enhance or improve the value of other property in the immediate neighborhood, and that it was ruled in *Senefsky* v. *City of Huntington Woods*, 307 Mich 728 (149 ALR 1433), that such a desire may not be the sole factor impelling a rezoning. See, also, a leading case, *Mansfield & Swett, Inc.*, v. *Town of West Orange*, 120 NJL 145 (198 A 225).

"The foregoing remarks indicate the court's conclusion with respect to the second issue in this case.

The court is definitely of the opinion that the action of the local authorities here was arbitrary, unreasonable, discriminatory and confiscatory. See, in this connection, *City of Pleasant Ridge* v. *Cooper,* 267 Mich 603; *City of Muskegon* v. *Miller,* 249 Mich 52; *Long* v. *City of Highland Park, supra;* and, in particular, *Warner* v. *City of Muskegon,* 344 Mich 408, 412, a case similar in facts, where the Court said:

" 'The only question here * * * is whether * * * said ordinance is unreasonable, arbitrary and void as applied (to plaintiff's premises). * * * Their use is essential to plaintiffs (in connection with their business). * * * Parcel D is virtually landlocked insofar as it may be used for residential purposes * * * the best and most profitable use * * * would be for business or commercial * * * it would be financially unsound to develop them for residences.'

"It seems to this court that the value of a piece of property to an owner is dependent upon his ability to use it. Plaintiff does not want this property for residential purposes. But, more importantly, the expert opinion upon which the court relies, was emphatic to the effect that it would be worthless for residential uses. We have here the situation referred to in the *Grand Trunk Case, supra,* 392, 393:

" 'The effect of the ordinance is to prevent the use of much of plaintiffs' property * * * for any profitable purpose. There is no foreseeable return * * * from their vacant property if the *status quo* established by the ordinance is maintained.'

"One other matter may be dealt with briefly. The principal defendant, the city, pleaded 'laches' as a defense. However, it transpired that the city made no effort at the trial to prove the elements of such a defense. The intervening defendants, a group of homeowners in the neighborhood, attempted to pick up and utilize this defense. It is the position of the court that laches is a defense not available to the principal defendant, legally or factually, even if it had not been abandoned so far as proofs are con-

cerned. Having vanished from the case, so far as the principals were concerned, it follows that it may not be invoked by the intervenors, under the rule of law established by the statute (CL 1948, § 612.11 [Stat Ann § 27.663]), that they must come into the action 'in subordination to * * * the main proceeding.' They may not broaden the issues which were litigated between the principal parties. See 11 Encyclopaedia of Pleading and Practice, pp 509, 510; *Chase* v. *Washtenaw Circuit Judge,* 214 Mich 288; *Mayer* v. *Stahr,* 35 La Ann 57; *Van Gordon* v. *Ormsby Bros. & Co.,* 55 Iowa 657 (8 NW 625). Even if the defense were available to the intervenors, the court would hold that they did not make out the factual elements necessary thereto.

"In view of the foregoing, the court holds that the action of the municipality in running the district boundary line across the plaintiff's lot of record so as to restrict the rear segment to residential uses was not necessary to any general zoning plan of the defendant city.

"The court further holds that restricting the rear segment of plaintiff's tract to residential uses did not have the direct and substantial relationship to the public good of the community as a whole which is a requirement of such regulation.

"The court also holds that the effect of the rezoning provision, which was almost totally confined in its operation to plaintiff's land, is to create of this rear segment a parcel of 'dead land,' as the circumstances proven here would never warrant the investment which would be necessary to develop it for residential use, nor permit an adequate return on the amount of any investment, as the land is worthless for residential purposes. In my opinion, the provision, as applied to plaintiff's land, is not a 'regulation' but a 'taking;' and I hold that 'it lies not within the power of a municipality to zone property as to render it worthless. Such is not zoning— it is confiscation.' See *Tews* v. *Woolhiser,* 352 Ill 212, 221 (185 NE 827). The provision here deprives

the owner of any practical use, yet leaves him subject to the burden of taxation. It works a great hardship upon him; at the same time there is no gain to the public, only an exclusive and preferential advantage to particular neighboring landowners, but 'neighboring owners do not possess the right to interpose for their own special benefit restrictions upon the use of the tract in question.' See *Mansfield, supra,* 160.

"In conclusion, the Court holds the particular rezoning provision, as applied to the rear segment of plaintiff's land, to be unconstitutional and void for the reasons above adduced."

We have examined the briefs and the complete record of the trial below and find this to be the unusual type of case Justice SMITH was referring to in his scholarly opinion of *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425, 430, 431, when he said that "this Court does not sit as a superzoning commission," and "we do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises," except in the unusual case. According to the findings of fact by the trial judge unusual circumstances do exist in this case. We agree that the record supports these findings of fact. Unsuitability for residential purposes (*Ritenour* v. *Township of Dearborn,* 326 Mich 242), lack of market for such purpose (*Long* v. *City of Highland Park,* 329 Mich 146), and "dead land" without residential value (*Janesick* v. *City of Detroit,* 337 Mich 549) do exist.

We do not believe we could improve upon the trial court's opinion as written and we, therefore, adopt it with these few additional remarks. Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.