BURRELL *v.* CITY OF MIDLAND.

1. Municipal Corporations—Zoning Ordinances—Presumptions.
   Municipal zoning ordinances are valid exercises of the police
   power and every presumption is indulged in favor of their
   validity.

2. Same—Zoning Ordinance—Application to Particular Property.
   A municipal zoning ordinance that is unreasonable and confisca-
   tory as applied to a particular piece of property cannot be
   sustained as to it.

3. Same—Zoning Ordinance—Residence—Commercial Use.
   Findings of trial court in suit to invalidate city zoning ordinance
   classifying plaintiffs' property for residential use although
   present nonconforming use as a storage yard for road con-
   tractor had antedated annexation of territory to city, that
   property had no value for residential purposes but had great
   value as commercial property *held*, proper under evidence ad-
   duced, hence, permit for erection of grocery store was properly
   issued.

Appeal from Midland; Holbrook (Donald E.), J.
Submitted October 5, 1961. (Docket No. 25, Calen-
dar No. 48,903.) Decided December 1, 1961.

Bill by Elmer J. Burrell and Alvera M. Burrell
against the City of Midland, a municipal corporation,
to invalidate zoning ordinance as applicable to their

References for Points in Headnotes
[1] 58 Am Jur, Zoning § 16.
[2] 58 Am Jur, Zoning §§ 21, 22.
[3] 58 Am Jur, Zoning §§ 139, 140, 146 *et seq.*
Zoning: creation by statute or ordinance of restricted residence
districts from which business buildings or multiple residences are
excluded. 19 ALR 1395, 33 ALR 287, 38 ALR 1496, 43 ALR 668,
54 ALR 1030, 86 ALR 659, 117 ALR 1117.

property.  Decree for plaintiffs.  Defendant appeals.
Affirmed.

*William D. Sinclair,* for plaintiffs.

*Joel H. Kahn,* for defendant.

KELLY, J.  This is an action to declare invalid a
zoning ordinance of the city of Midland as applied to
plaintiffs' property.

The property in question was purchased by plain-
tiffs while it was still in the township of Midland.
The plat of the subdivision in which the property is
located was recorded in March, 1953, at which time
plaintiffs' lots were designated for commercial busi-
ness purposes only.

In June, 1953, by election, 16 square miles of Mid-
land township were annexed to the city of Midland.
The annexed area included the subject property.  In
July, 1953, an interim zoning ordinance was adopted
classifying the property as residential "A" pending
a permanent ordinance.  It authorized the zoning
board of appeals to permit the building inspector
to issue permits for the construction of, or use of,
buildings in the newly annexed area for other than
residential purposes, prior to permanent zoning,
under certain conditions.

Under this interim ordinance 2 buildings were
authorized by the zoning board of appeals in this
general area.  The first permit was granted to plain-
tiffs in August, 1953, to construct a building for a
grocery store on property immediately across the
street and to the west of the subject property.  The
other permit was issued in June, 1954, and was for
the construction of a store building, known as God-
wins (a television store), located 1,150 feet to the
east of the subject property, approximately 4 blocks
away.

In November, 1954, the permanent ordinance No 411 (here in question) was adopted, by which all of highway US-10 west of a business "B" zoning location at the intersection of Eastman road and US-10 (approximately 1,650 feet east of the subject property) to the westerly boundary of the city (approximately 8,400 feet to the west of the subject property) was zoned residential (and agricultural), which again included plaintiffs' property. The property to the north and south was also zoned residential or agricultural. The ordinance provided for the continuation and expansion of nonconforming buildings and uses in existence at the time of adoption, and under this nonconforming use section the plaintiffs had used the property as a road contractor's storage yard.

September, 1958, plaintiffs filed a petition to rezone this property from residential "A" to business "B", intending to build thereon another grocery store and remove the storage yard. The neighbors in the area offered no objection, obviously preferring the grocery store to the storage yard.

The exhibits filed herein and the testimony produced at trial substantiate the lower court's finding that the general nature of this area was commercial and the description of the area as appears in the trial court's opinion is as follows:

"Across the street to the south and further to the east and to the west, are large parcels of land classified and zoned as residential 'A-1', with no development as yet. This property appears to be very desirable for residential development and it was indicated upon the trial that should the property be developed that it no doubt would provide for the rear part of the lots facing US-10. To the west of the property involved we have a supermarket operating under the name of Vescios, which is a thriving enterprise, occupying lots 1 and 2. Immediately to the

west of that is a large Standard Oil service station, using a front of 200 feet. To the west of that is an old home formerly used as a law office and now vacant, which is on the corner of Drake and US highway 10. To the west of that is a residence on the corner, and immediately to the west of the residence is a carpet service building, and to the west of that an electrical shop; to the west of that a barber shop, and then residences for an additional block and a half to Sturgeon road and US-10, where there is a large storage building in connection with a moving business. To the east of the property in question is a frontage of 200 feet owned by the Pure Oil Company, where certain pipe-line connections are maintained to regulate such pipe lines owned by the Pure Oil Company. To the east of that is a frontage of approximately 490 feet, which has a residence that was erected there many, many years ago. Next is Campau street, and to the east of that a strip of land on US-10 classified as residential 'C', or a buffer zone of approximately 500 feet. Then to the east of that is a large shopping center of 28 acres in size, with approximately 1,200 feet of frontage on US-10, and 1,200 feet of frontage on Eastman road, which goes north and south of the intersection of US-10, classified as business 'B'. Immediately to the south of this description is property classified as residence 'B', except the corner lot, which is the Pure Oil station, and is classified business 'B'. It is also well to note that on US-10 practically in the middle of the 28 acres of land there is a small lot about 100 feet wide, which has located on it a tavern and beer garden. That in the residential 'C' classification property heretofore noted, that there is a motel and restaurant and Godwins appliance shop, which take up practically all of said residential 'C' property. For a space from Drake street, which is 500 feet west of the property in question, to Eastman road, we have business property, either so classified or so used, with the exception of 500 feet upon which there is a residence built many, many years ago.  *  *  *

"US-10 is a heavily traveled highway. Many thousands of automobiles pass this property every day, it is as a result noisy, with traffic hazards present. The property in question appears to be unsuited for residence 'A-1' purposes. From the testimony of the witnesses it appears that it is next to impossible to develop the property for residential purposes. *  *  *

"The court finds that building homes on this particular land is very difficult for the reason financing is not available, and further that people do not desire to be on this main thoroughfare at this particular location; that the property is of great value for business property and of very little value for residential property, that the property is adapted to business use and of little, or dubious value for residential purposes."

The testimony showed that the Federal housing administration (FHA) would give no financing for residential purposes in this area and that as business property the land had a value of $25,000, but was practically valueless for residential purposes.

The Midland zoning board of appeals in granting authorization for the construction of the grocery store built by plaintiff under the interim ordinance, stated:

"As the property in question currently shows tendency of developing into commercial property and as such development is expected to be confined to the north side of US-10 a motion is made by Cletus Supinger and supported by Gerald Bolsted that a building permit be granted to Elmer Burrell to erect a 30' by 60' building for a grocery store on lot 1, Idle Acres Subdivision on US-10, notwithstanding the present and proposed zoning."

Similarly, in granting authorization for the construction of Godwins TV under the interim zoning ordinance, the zoning board of appeals made the following statement:

"Whereas, said property was purchased by Godwins Television; for the purpose of erecting a building for the conduction of a television and appliance business, prior to annexation to the city, and; whereas said property is located in a neighborhood with existing commercial and nonconforming commercial property; and whereas, the zoning board of appeals is in agreement that the denial of the permit would be unrealistic, in view of the existing conditions and will work an undue hardship, therefore, on motion by 'Withrow', and seconded by 'Supinger', the action of the building inspector is hereby rescinded and the zoning board of appeals hereby grant a building permit subject to the approval of the building inspector."

In this appeal the defendant, city of Midland, argues that the ordinance was a valid exercise of the police powers and a promotion of the public health, safety, and welfare, and states that a superhighway or expressway is being built which will change the character of US-10 so as to make it a feeder line for said superhighway and eventually make the property abutting US-10 more desirable for residential purposes. It is further contended that there now exists in the city of Midland considerable vacant property which has already been zoned for business purposes.

We have repeatedly held that zoning ordinances are valid exercises of the police power and that every presumption is indulged in favor of their validity. *Janesick* v. *City of Detroit,* 337 Mich 549; *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425. However, if an ordinance in its application is unreasonable and confiscatory it cannot be sustained. *Fenner* v. *City of Muskegon,* 331 Mich 732.

In determining if an ordinance is unreasonable and confiscatory in its application, we have given consideration to such factors as the property's un-

suitability for residential purposes (*Ritenour* v. *Township of Dearborn,* 326 Mich 242, 249), lack of "market for said property  *  *  *  for use for residential purposes" (*Long* v. *City of Highland Park,* 329 Mich 146, 151, 152), and "dead land" or nonincome-producing land without residential value (*Janesick* v. *City of Detroit, supra,* 552). Still other factors are high traffic volumes and adjacent business uses. *Bassey* v. *City of Huntington Woods,* 344 Mich 701.

The findings of the trial court which we have quoted are fully supported by this record. They indicate presence of all of these factors. The total factual situation convinces us, as it did the trial judge, that the ordinance as applied to the instant property was constitutionally unreasonable.

The decree is affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.