## WENNER *v.* CITY OF SOUTHFIELD.

1. MUNICIPAL CORPORATIONS — ZONING — SINGLE-FAMILY RESIDENCE USE.

> Evidence presented in suit to declare city's zoning ordinance restricting use of plaintiff's premises, 284' wide by 120' deep, to single-family residences along a thoroughfare along which 2,800,000 vehicles pass annually and permitting but 28' depth for building use *held*, unreasonable as to plaintiff's premises.

2. ADMINISTRATIVE LAW—EXHAUSTION OF REVIEW REMEDY—MUNICIPAL CORPORATIONS—ZONING—BUILDING PERMIT.

> Claim that plaintiff property owner had failed to exhaust his administrative remedies upon refusal by director of building and safety engineering of building permit to erect office building on lots zoned for single-family residence use by not taking the matter up with the city administrator to whom the director was responsible *held*, ill-founded, where charter makes no provision for such appeal to the city administrator.

Appeal from Oakland; Ziem (Frederick C.), J. Submitted October 17, 1961. (Docket No. 87, Calendar No. 48,848.)    Decided March 16, 1962.

Bill by Sam Wenner against the City of Southfield, a municipal corporation, and various of its officials, to declare zoning ordinance restrictions invalid as to his property and to enjoin interference with his building operations thereon. Decree for plaintiff. Defendants appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 142.
  Creation of restricted residence districts.    117 ALR 1117.
[2] 58 Am Jur, Zoning §§ 243, 244.

*Davis & Thorburn,* for plaintiff.

*James C. Allen,* for defendants.

DETHMERS, C. J.   This is an action to compel defendant city, and its officers and employees named as codefendants, to issue to plaintiff building permits for construction of buildings to be used as medical clinic office buildings on his property and to enjoin enforcement against it of 1-family residential zoning ordinance restrictions.   From decree for plaintiff the defendants appeal.

Plaintiff owns lots in Southfield Park Subdivision in defendant city.   They have 284 feet of frontage on Ten Mile road, and are platted with a depth of 120 feet.   Ordinance requirements for front and back yard allowances leave but 28 feet depth for placing a building.   Two million, eight hundred thousand vehicles per year pass the property on Ten Mile road.

Plaintiff says that, as applied to his property, the ordinance requirement limiting use to 1-family residential purposes is arbitrary, unreasonable and confiscatory and, hence, unconstitutional.

The evidence on usability of the property for residential purposes is somewhat in conflict.   For the defendants, a real-estate salesman testified that the property has a value of around $50 a front foot for residential purposes; that there are occupied residences facing Ten Mile road.   He admitted that, in so testifying, he had not been aware of the above mentioned ordinance limitations on the portions of the lots left available for a building.   A building contractor, who had built homes for sale nearby, and 1 of his purchasers testified that the premises are usable for residence purposes.   Their testimony plaintiff seeks to discount on the score of personal

interest in maintaining the residential zoning as an aid to selling their own houses.

For plaintiff, an appraiser of the Federal housing administration testified that application for financing of home construction on the property had been turned down, and that it would not insure mortgages on residential structures on Ten Mile road in that area. A real-estate broker testified that the lots would be worthless zoned for residential use, but worth $150 per front foot unzoned, and that their highest and best use would be for office buildings; that 4 houses fronting on Ten Mile road, east of plaintiff's lots, had been built for sale 2 years before date of trial and remained unsold and unoccupied; that identical homes in the interior of the same subdivision sold for $20,500 but that purchasers could not be found for those fronting on Ten Mile road at $17,000. An officer of the building company, which had built houses for sale in the neighborhood, testified that 557 homes, being 80% to 90% of all the homes built by that company in the previous year and one-half, had been sold, but only 5 out of 9 of those built by them on Ten Mile road had been sold. Another real-estate broker testified that plaintiff's property would be just about worthless for residential use. Another broker testified it is not worth a dollar for residential purposes. A real-estate investor, builder, and developer, who had built and sold from 500 to 600 homes, testified that, if plaintiff's land were given to him for nothing, he would not build homes on the lots because he would not be able to get his money out of the properties again. An architect testified that it is completely inadvisable to build residences on Ten Mile road at this location, because of excessive traffic, noise, fumes, and danger for children. Another real-estate broker confirmed this and added building area limitations

on the lots and lack of playground space for children as further drawbacks.

The trial court did not pass on the validity of the ordinance as applied to plaintiff's land, having granted him relief on the ground of rights allegedly acquired by former nonconforming use. We are confronted, then, with the necessity of weighing the testimony on the subject of reasonableness without benefit of the trial court's appraisal thereof.

Examination of all the testimony persuades us that the property is decidedly not suited to residential use. Accordingly, we hold the ordinance unreasonable as applied to plaintiff's property. *Oschin* v. *Township of Redford,* 315 Mich 359; *Ritenour* v. *Township of Dearborn,* 326 Mich 242; *Long* v. *City of Highland Park,* 329 Mich 146; *Janesick* v. *City of Detroit,* 337 Mich 549; *Bassey* v. *City of Huntington Woods,* 344 Mich 701; *Frendo* v. *Township of Southfield,* 349 Mich 693; *Spanich* v. *City of Livonia,* 355 Mich 252.

Defendants say plaintiff has no standing in a court of equity because of failure to exhaust his administrative remedies. Plaintiff went to the city's building department and presented his applications for permits to build the office buildings and they were denied by the city's officer, defendant Gidley, variously described as the city's inspector and as its director of building and safety engineering. Plaintiff then brought this suit. The city's charter, § 6.12 (a), provides:

"The department of building and safety engineering shall be in the immediate charge of the director of building and safety engineering who shall be responsible to the city administrator."

Defendants say that after Gidley refused to grant the permits plaintiff should have taken up the matter with the city administrator to whom Gidley was re-

sponsible. The charter makes no provision for such appeal to the city administrator. We deem defendants' contention on this point ill founded.

Affirmed, with costs to plaintiff.

CARR, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.