WHITE *v.* TOWNSHIP OF SOUTHFIELD.

1. TOWNSHIPS—ZONING.
    Each zoning case in a township must be determined on its own facts and circumstances.

2. SAME—ZONING—RESIDENCE USE—FRONTAGE ON ARTERIAL HIGH-WAY.
    Evidence presented in suit by owners of 30-acre tract with 1,616-foot frontage on a high speed, heavily traveled, arterial highway on which approximately 15,000 vehicles travel daily at an average speed of 55 miles per hour to hold invalid zoning ordinance restricting use of entire tract to residential development *held,* to justify trial court's conclusion that such frontage to a depth of 200 feet should not be so restricted.

    SMITH and EDWARDS, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning § 8.
[2] 58 Am Jur, Zoning § 142.
[2] Creation by statute or ordinance of restricted residence districts from which business buildings or multiple residences are excluded. 19 ALR 1395; 33 ALR 287; 38 ALR 1496; 43 ALR 668; 54 ALR 1030; 86 ALR 659; 117 ALR 1117.

Appeal from Oakland; Doty (Frank L.), J. Submitted June 6, 1956. (Docket No. 23, Calendar No. 46,494.) Decided December 28, 1956.

Bill by Mary A. White, Josephine Sholtz, Jennie E. Dodge, Edwin L. White, and Anna W. White against the Township of Southfield, a municipal corporation, to determine zoning ordinance void as to portion of their property. Decree for plaintiffs. Defendant appeals. Affirmed.

*Howard I. Bond* and *William F. Dohany* (*J. Shanley Hagerty,* of counsel), for plaintiffs.

*Dell & Heber* (*Harry N. Dell,* of counsel), for defendant.

KELLY, J. The Oakland county circuit court decreed that a Southfield township ordinance (No 118) restricting the use of the easterly 200 feet of plaintiffs' property to residential purposes was invalid, unreasonable and void as applied to plaintiffs' property, and the township of Southfield appeals.

Plaintiffs' property consists of about 30 acres of vacant land located on the west side of Telegraph road, with a frontage on Telegraph road of approximately 1,616 feet and a frontage on Eleven Mile road of approximately 1,300 feet. The court decreed that the frontage on Telegraph road, of 1,616 feet, for a depth of 200 feet, should not be restricted to residential use, but did not disturb the residential restriction as it applied to the remainder of plaintiffs' 30 acres.

Appellant admits that Telegraph road is a high speed, heavily traveled, arterial highway and the proofs disclosed that approximately 15,000 vehicles travel Telegraph road each day, at an average speed of 55 miles per hour.

Property fronting on Telegraph road (to the south of plaintiffs' property) between the Eight Mile and Ten Mile roads is zoned as commercial and business, and about 1/2 mile north of plaintiffs' property Telegraph road is also zoned for commercial and business purposes.

Ninety per cent of the people seeking lots to build homes on would not consider lots on Telegraph road and fathers and mothers refuse to consider these lots because of the heavy traffic and high speed, according to the testimony of real-estate broker John W. Grimes.

Real-estate broker McKenzie testified:

"I am familiar with the traffic conditions upon Telegraph road. It would affect the desirability of this property fronting on Telegraph road for residential purposes very much. I wouldn't know what line of salesmanship I would use to try to sell somebody a lot to build a house on Telegraph road. I would have to find some new angles. I don't know —I can't think of anything after all of these years."

Mrs. Catherine Ziemniak has resided at 26276 Franklin road for 17 years; her property extends from Franklin to Telegraph road and is approximately 100 feet from the southerly boundary of plaintiffs' property. She has been endeavoring to sell her home and property for $12,000 without success; she testified that 9 prospective purchasers had looked at her property since she listed it and all 9 had said they were not interested because of its proximity to Telegraph road. She described the problems caused by the traffic on Telegraph road as follows:

"I have observed the traffic conditions for these past 17 years. I will say it is increased to an awful amount—much more—because we have our house standing on Franklin road and our kitchen is on the

turn over there, facing Telegraph road—it is around 160—maybe a little more—feet, and when the heavy trucks come by, the shaking and vibration I can feel in the kitchen. You do feel it at night. The heavy trucks at night. They start increasing after midnight—haulaway trucks—the vibration is so I can hear the windows shake in the house, so that is the vibration we hear."

There are 6 homes on the easterly side of Telegraph road between Ten and One-half Mile road and Eleven Mile road. Four of these homes are directly across from plaintiffs' property. None of the owners of these 6 homes offered testimony, nor were they called as witnesses, nor does the record disclose that they made any protest against plaintiffs' desire to use their property for commercial purposes. Also, the defendant did not call a realtor to refute the testimony of realtors Grimes and McKenzie.

All witnesses, including defendant's witnesses, agreed that by requiring residential zoning, as opposed to commercial zoning, the value of plaintiffs' property was reduced from $100 per foot to $20 to $30 per foot.

David Geer, a professional city planner, employed by Southfield township on a per diem basis, testified that plaintiffs should be confined to residential development because to allow them to develop their property fronting on Telegraph road for commercial purposes would call for "ribbon zoning," thereby increasing "the hazard of the highway, add to the congestion and slow up the movement of the traffic on the highway itself." He testified that he was quite sure a layout could be prepared for plaintiffs' land that would make it a very sound residential investment, and, being questioned as to how this could be done, stated:

"I am not sure of all the details, it might possibly be (the buildings could face some other street parallel to Telegraph) or we might set the residences back three or four hundred feet from the highway, or they might be backed up to Telegraph."

Geer's testimony is not persuasive when considered with that of the traffic engineer for the State highway department, Samuel J. Levine, who testified that new commercial development is subject to controls of the State highway department regulating traffic going off or onto the highway; that recently such access controls were satisfactorily established on Telegraph road between Nine Mile and Ten Mile roads and, also, in Birmingham, Royal Oak, Pleasant Ridge and Pontiac.

This Court has repeatedly held that each zoning case must be determined upon its own facts and circumstances. The facts in this appeal sustain the conclusion of the trial court that ordinance No 118 of the township of Southfield does not and should not apply to the easterly 200 feet of plaintiff's land fronting on Telegraph road and, therefore, such property is not restricted to residential development.

Affirmed. Costs to plaintiffs.

DETHMERS, C. J., and SHARPE, BOYLES, and CARR, JJ., concurred with KELLY, J.

EDWARDS, J. (*dissenting*). Justice KELLY has outlined the facts in this matter. Careful consideration of them, and the applicable legal principles, compels me to disagree with his result. The sole issue in this case is: Is it an unconstitutional use of the police power for a township to zone property adjacent to a heavily travelled highway for residential purposes exclusively? An affirmative answer to this

question by this Court in my mind would play havoc with all city planning and zoning.

Traffic of greater or lesser degree and in volumes increasing or decreasing by the year, is a part of our modern life. A declaration that as a matter of law proof of heavy travel on an adjacent highway voids a residential zoning provision would constitute a threat to the stability of practically every zoning ordinance in the State of Michigan. Further, it would invite litigation in relation to every piece of property zoned for residence along every heavily-travelled highway in the State. Moreover, it would place the trial courts and the Supreme Court squarely in the business of determining just how much traffic and of what character would serve to void a particular litigated zoning provision.

Such a practice would, in my view, represent a major judicial intrusion upon the discretion vested in local legislative bodies who are charged with the adoption of zoning ordinances.

Justice Bushnell in *Hammond* v. *Bloomfield Hills. Building Inspector,* 331 Mich 551, set forth the following review of the principles under which this Court decides upon the validity or invalidity of zoning ordinances, pages 555, 556:

"The law is well settled that zoning ordinances are constitutional in principle as a valid exercise of the police power. *Austin* v. *Older,* 283 Mich 667; *Village of Euclid* v. *Ambler Realty Co.,* 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016). It is also settled law that a zoning ordinance must be reasonable and that its reasonableness becomes the test of its legality. *Moreland* v. *Armstrong,* 297 Mich 32; and *Hitchman* v. *Township of Oakland,* 329 Mich 331.

"Each zoning case must be determined upon its own facts and circumstances. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433);

and *Hitchman* v. *Township of Oakland, supra.* There is nevertheless a presumption in favor of the constitutionality of zoning regulations, and plaintiffs must sustain the burden of showing that such regulations have no real substantial relation to public health, morals, safety, or general welfare. *Fass* v. *City of Highland Park,* 321 Mich 156; *Northwood Properties Co.* v. *Royal Oak City Inspector,* 325 Mich 419.; and *Hitchman* v. *Township of Oakland, supra.* Furthermore, such an ordinance may not be held invalid unless the constitutional objections urged against it are supported by competent evidence or appear on the face of the enactment in question. *Portage Township* v. *Full Salvation Union,* 318 Mich 693; and *Northwood Properties Co.* v. *Royal Oak City Inspector, supra.* Such invalidity does not appear on the face of an ordinance merely because of a classification of certain property for use for single residences only. *Northwood Properties Co.* v. *Royal Oak City Inspector, supra.*"

American Jurisprudence gives the following general statement as to the function of a zoning ordinance (58 Am Jur, Zoning, § 27, p 957):

"A zoning law to be valid must carry with it the necessary incidents to a proper exercise of the police power, and in this respect it has been held that the regulation of the development of a city under a comprehensive and carefully considered zoning plan tends to promote the general welfare of the community, and that the adoption and enforcement of such a plan, when fairly conceived and equably applied, is within the scope of police power. The necessity for the exercise of the zoning power may be made to appear from the reasonable anticipation of future growth and development, as well as from existing conditions. There is also authority to the effect that in determining whether a zoning ordinance is valid, the court must consider whether the zoning scheme is sound as a whole."

Of even more direct application to our current problem is the following:

"One of the most firmly established principles in the field of constitutional law is that the wisdom of legislation is a matter exclusively for legislative determination. This principle has been applied to zoning laws and courts have been declared to have nothing to do with the question of wisdom, expediency, propriety, or good policy thereof. The courts may not interfere with the enactment or enforcement of zoning provisions for the sole reason that they may be considered unwise, as long as their requirements may not be classified as unreasonable, or as long as there is apparently legal reason for the enacted requirements." 58 Am Jur, Zoning, § 23, p 954.

With these general legal principles before us, let us look at the instant case. According to the record in this case Southfield township is in the northwest section of the Detroit metropolitan area characterized by a rapidly developing residential neighborhood. According to Mr. David Geer, a professional city planner, who testified for the defendant, it is "to a considerable extent country-home acre development, with a fringe along the southern boundary and eastern boundary of more typically urban type of development and some remaining farms and undeveloped land." Some industrial uses grew up in Southfield township before any zoning law was adopted, most of them being in the southern portion of the county, with some such development along Telegraph road from Eight Mile road to Ten Mile road.

The piece of property about which this litigation turns is located at the juncture of Eleven Mile road and Telegraph road. Eleven Mile road is not a through or traffic street. All of the property for a considerable distance both north and south of

this property on both sides of Telegraph road is zoned* for residential purposes, as is most of the Telegraph road frontage for several miles to the north through Bloomfield township where Telegraph runs through an area described in this record as one of fine residences.

All of the property within a mile of plaintiffs' land is residentially zoned with the exception of business zoning at the major intersection of Telegraph and Northwestern highways. Immediately across Telegraph road from plaintiffs' property there are 6 houses of some considerable value, some of which have been built in recent years since the development of traffic volumes on Telegraph.

As the record stands before this Court, it is apparent that a logical application of Justice Kelly's opinion would run a strip of commercial and/or industrial development directly through one of the most completely residential areas in the Detroit metropolitan district.

The record shows that the plaintiffs, or plaintiffs' family, have owned this property since 1874. The property in dispute is 30 acres of completely undeveloped land. Witnesses for both sides testified that for commercial purposes the Telegraph road frontage was worth $100 a foot, whereas the same frontage for residential purposes was valued at from $20 to $35 a front foot.

With these facts in front of us we can more accurately ask the applicable questions: 1. Is there a general zoning plan in Southfield township with a real substantial relationship to public health, safety, or general welfare? From the above, it appears to this writer this question should be answered in the affirmative. 2. Does the operation of the zoning ordinance as to plaintiffs' property act to render

---

* Authority of CL 1948 and CLS 1954, § 125.271 et seq. (Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2963 [1] et seq.).

plaintiffs' property worthless or almost worthless? *City of North Muskegon* v. *Miller,* 249 Mich 52; *Ervin Acceptance Co.* v. *City of Ann Arbor,* 322 Mich 404; *Grand Trunk Western R. Co.* v. *City of Detroit,* 326 Mich 387. The record here discloses that plaintiffs own 1,617 feet of Telegraph road frontage, which would place an approximate $32,000 valuation on the Telegraph frontage alone if the residential zoning were maintained as to this totally undeveloped doubtless originally farm land.

Judge Doty in his opinion brushed aside the interests of the residential property owners across Telegraph road and in the nearby areas of Southfield township and found as follows:

"The traffic hazard, noise, smoke and general increasing business and commercial development in the immediate vicinity of plaintiffs' property makes it unsuitable for residential purposes. Therefore, Ordinance 118, as applied to plaintiff's property, is unreasonable and invalid."

There is no testimony in this record relating to increasing business and commercial development in the immediate vicinity of plaintiffs' property. Traffic hazards, noise and smoke are, indeed, a part of high volume traffic on through highways. The writer does not feel that it lies within the function of the judiciary to establish as a rule of law that these factors of and by themselves render all residential zoning adjacent to arterial highways unreasonable or unconstitutional.

The zoning ordinance in dispute should be held reasonable and valid.

The decree of the trial court below should be reversed for an entry of a decree in accordance with this opinion.

SMITH, J., concurred with EDWARDS, J.

Black, J. (*concurring in affirmance*). In this fact-distinctive case the chancellor found on persuasive and largely undisputed proof that beneficial use of plaintiffs' premises—referring to the strip adjacent to Telegraph road—cannot be made consistent with the ordinance we scrutinize. To uphold the municipal restriction in circumstances so proven would amount to an unconstitutional taking of private property without due process and without payment of just compensation. The ordinance as applied to the premises in question thus offends supreme authority and cannot stand.

I do not share concern of Mr. Justice Edwards that the decree below, if upheld, will unsettle and threaten stability of zoning ordinances generally. The present defendant offered no proof of substance, in answer to that submitted by plaintiffs, on which this Court of equity might with propriety find that the strip can be devoted, in whole or in part and within reason, to the limited use permitted by such ordinance. In future cases, where such answering proof is available, it is to be presumed that the defendant municipality will protect its assailed ordinance through forceful advancement of that proof.

I concur in affirmance for stated reasons.