DEQUINDRE DEVELOPMENT CO. *v.* CHARTER TOWNSHIP OF WARREN.

1. MUNICIPAL CORPORATIONS—TRAILER COACHES.
   Statutorily supervised trailer coach life, approved as a matter of State policy, cannot be outlawed by local ordinance (CL 1948, § 125.751 *et seq.*, as amended, and PA 1959, No 243).

2. SAME—ZONING ORDINANCES—VALUE.
   Township and city zoning ordinances as applied to a particular tract of property, which render it unusable and valueless, are unconstitutional as to such property.

3. SAME—PRIVATE PROPERTY—EMINENT DOMAIN.
   A municipality may not use privately-owned lands for any public purpose, however necessary and laudable that purpose may

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations § 165.
[2] 58 Am Jur, Zoning § 140.
[3] 11 Am Jur, Constitutional Law § 318; 12 Am Jur, Constitutional Law § 651.
[4] 3 Am Jur, Appeal and Error § 1160.

be, without having taken and paid therefor in the exercise of the power of eminent domain (Const 1908, art 13).

Per DETHMERS, C. J., and CARR, KELLY, BLACK, and KAVANAGH, JJ.

4. INJUNCTION—ZONING ORDINANCES—EQUALLY DIVIDED COURT.
    Decree granting injunction against enforcement of zoning ordinance restricting use of one 17-acre end of plaintiff's 37-acre tract to single-residence use is affirmed unconditionally by an equally divided court.

SMITH, EDWARDS, and SOURIS, JJ., dissenting.

Appeal from Macomb; Robinson (Thomas N.), J. presiding. Submitted January 13, 1960. (Docket No. 59, Calendar No. 48,095.) Decided June 6, 1960.

Bill by Dequindre Development Company, a Michigan corporation, against the Charter Township of Warren (now City of Warren), a municipal corporation, and Arthur J. Miller to declare the enforcement of zoning ordinance unreasonable as to its property, to enjoin enforcement thereof, and to secure rezoning. Decree for plaintiff. Defendants appeal. Affirmed unconditionally by an equally divided court.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Glenn D. Curtis,* of counsel), and *Maiullo & Maiullo,* for plaintiff.

*Kenneth E. Cole* and *Howard E. Snapp,* for defendants.

BLACK, J. (*for affirmance on condition*). In principle this zoning case cannot be distinguished from *Spanich* v. *City of Livonia,* 355 Mich 252. Much as in *Spanich,* plaintiff's 17-acre tract of land—now vacant and zone-restricted to single-family permanent residences—lies immediately adjacent to a new and operational industrial area on one side, the west.

A trailer coach park, also operational and bursting at the occupational seams[*], is situated on another side, the south. To the immediate north and east "are some dwellings, mostly not modern." The rub comes from the fact of a newly developing school site lying about 600 feet north of the tract, opposite which "is a new subdivision with modern homes of the value of $15,000 to $18,000." Such physical facts make it immediately apparent that the defendant municipality in effect has zone-designed the tract as a sort of buffer strip dividing industrial and congested trailer-life areas lying westerly and southerly thereof from a modern residence area which has been and is developing northeast of such strip. Why this was done was considered by the chancellor at length, as ensuing quotation of his opinion will disclose.

The tract, heavily wooded and vacant, consists of the east 17 acres of an original rectangular shaped 37-acre area plaintiff acquired in 1953. The municipal boundaries of that area are Dequindre on the west; Morrissey on the north; Warner on the east; and Bart (but partially opened) on the south. At the time of acquisition such area was zoned by the defendant charter township (now city of Warren) for single-family residential use, designated R-1. For the purpose of planned industrialization thereof, plaintiff made due application under the township zoning ordinance for rezoning of the entire rectangle. The result was an amendment authorizing manufacturing and industrial use applicable only to the west 20 acres of such rectangle. The remainder, which is the tract in question, was left zoned as before. Plaintiff does not like this, with fair cause as the chancellor held.

---

[*] The area of this park is an approximate 5 acres. About 200 in-use trailer coach homes occupy such area.

Plaintiff's steady effort to obtain for the tract a new zoning classification was fruitless. Apparent from the testimony is an obvious conflict of judgment between the township board and the township zoning commission. The latter resolved that the tract should be rezoned according to plaintiff's request. The former, having the last word, adamantly insisted that the ordinance-ordered classification should stand. As the issue progressed, plaintiff with some justification accused the board of stalling decision upon its application. Heated words followed. Finally, a series of meetings and negotiations having left the board unmoved, plaintiff instituted this suit to so relieve the described tract from the single-residence restriction as to permit its use for trailer coach park purposes. The chancellor, following due hearing and thorough inquiry into facts tending to show possible uses of the tract, prepared a lengthy and carefully considered opinion in which he ruled that the ordinance in pertinent application was and is unreasonable and hence invalid. The decree as entered pursues such ruling and, in addition, affirmatively orders the defendant city to "permit the plaintiff to build and develop said property as a trailer park." From such decree, the city appeals.

The chancellor concluded, with ample evidentiary support:

"In comparison with other acreage in Warren's 36 square miles now or soon to become available for residential development with completion of the sewage disposal plant contemplated for this year, it [the 17-acre tract] was perhaps justly termed by one of the witnesses as a 'substandard or low-grade,' if not actually a blighted area. A visit made by the court to the area in the company of counsel for both parties prior to the taking of testimony, and the photographs of the area in evidence furnish

nothing to disaffirm such observation. One of the witnesses, a builder, testified that plaintiff's property has absolutely no value for single-family residences due to the impractical economic result produced where expensive structures required by present high construction costs are placed on inexpensive lands in an undesirable location. The plaintiff was unable to obtain a purchaser for R-1 residential use of the tract or to finance loans for such use. In spite of the development of residential areas elsewhere in the township, the area in which plaintiff's property lies has not been developed under the present zoning. The new sewage plant will make available competitive areas which can have no other result than to reduce the desirability and, consequently, the value of plaintiff's property to a still greater degree by comparison.

"The issue before the court is that presented as of now, and the history of this litigation from the time the property was zoned R-1 and before it was purchased by plaintiff to the present time is indicative of the proposition that the city of Warren does not intend to permit trailer parks now or in the future. It is operating in the same way now that it operated under the ordinance prior to its amendment, which originally, in effect, prohibited trailer parks by making no provision therefor, and which condition induced the amendment to the ordinance in providing an R-4 classification, which defendant now ignores by nonobservance of its intent. When the planning commission in apparent good faith adopted its resolution recommending the rezoning of the 17 plus, acres R-4 for mobile homes, it did so with full knowledge of the physical facts disclosed on this record and of general property conditions in the area. That ordinance No 76 is a façade behind which defendant conceals a purpose to prohibit trailer parks unlawfully, while pretending to countenance their use under lawful conditions is indicated by the fact that even though such ordinance has permitted R-4 zoning classification

since September, 1955, a period of nearly 3 years, there is no instance in which either the township board or the city council has approved a rezoning to R-4.

"In this case where the plaintiff is willing to comply with State regulations and with any standards the city of Warren has established for trailer parks, it is met with a down-to-earth proposition stated by the building authority that there is no zoning ordinance permitting trailer parks and no application for such will be received and passed on until provision has been made for such zoning.

"Obviously, there has been a refusal on the part of the township board originally, and on the part of the city of Warren now, to rezone any parcel to R-4, regardless of its location or suitability for R-4 purposes, or unsuitability for R-1 purposes, and particularly so as to plaintiff's property. In so doing the defendant city through its city council is acting arbitrarily and according to its own caprice. The property even before it was purchased by plaintiff was improperly zoned for single-family residences as shown on this record. The subsequent passage of the original ordinance and the subsequent arbitrary refusal to rezone the property after the amendment emphasizes the fact that the property was never zoned properly in the first instance. No question of use for a trailer park was raised by plaintiff until after defendant refused to give the property a classification in an industrial zone, and until after plaintiff's efforts to use it as zoned for single-family residences proved fruitless and impracticable.

"While the courts will not interfere with ordinances passed by legislative bodies unless there is no room for legitimate difference of opinion concerning their constitutional unreasonableness, such proposition is not applicable to the case here under consideration. The existing zoning ordinance as it affects plaintiff's property is not a reasonable exercise of the police power. Such zoning provisions are

in this instance not predicated upon a public interest, and they have no substantial tendency to promote the public health, safety, morals, and welfare of the people."

As against these findings we are asked to consider and apply the defendants' opinion-proof to effect that the tract can be developed for the permitted purpose and that it is marketable for such purpose. The real defense, however, is that "an additional trailer park would result in undesirable density in the area and tend to produce slum conditions," and that such use if permitted would lead to "overcrowded schools and half day sessions." The school superintendent testified that children living in trailer parks "exhibit a much higher incidence of maladjustment than do other children." The defendant municipality submitted other testimony of like import, the specially-alleged force of which is that any more trailer parks in the 36 square miles of Warren's municipal territory would be undesirable and "unpopular," and that the previous experience of local authorities with trailer parks has been "distasteful."

These conditions, appealing as they do for relief, afford no justification for municipal confiscation of property or the outright prohibition of trailer coach parks by the selective administration of a local ordinance. The foremost reason is that statutorily* supervised trailer coach life so far has received due approval as a matter of State policy. Such mode of life cannot be outlawed by local act for reasons given in *Gust* v. *Township of Canton,* 342 Mich 436 (followed in *Smith* v. *Plymouth Township Building Inspector,* 346 Mich 57, and *Clark* v. *Lyon*

* See CL 1948, § 125.751 *et seq.,* as amended (Stat Ann § 5.278[1] *et seq.,* as amended), repealed by PA 1959, No 243 (CL 1948, § 125-.1001 *et seq.* [Stat Ann 1959 Cum Supp § 5.278(31) *et seq.*]).—RE-PORTER.

*Township Clerk,* 348 Mich 173), and so the stated defense is no defense in these factual circumstances.

As indicated above the chancellor did not accept defendants' proofs. I agree and would add these general thoughts of concurrence. Plaintiff has fairly established the essential drawbar of its case, that is, this next-to-factory and next-to-mobile home tract cannot be devoted to construction and use of single-family residences and so—foreseeably—is due to remain "dead land" as long as the ordinance is left free to restrict. Here then is another case where municipal authorities have attempted to ordain that which no one—themselves included—actually can perform. If single-family permanent dwellers understandably do not care to live immediately adjacent to an industrial area on one side and an area devoted to temporary living on another side, and if the necessary financing of construction of single-family homes is on that account not available, such an ordinance applied as here effects nothing but disuse of steadily-taxed private property until the judicial process intervenes. It is time to say, indeed, that a municipality may not use privately-owned lands for any public purpose, however necessary and laudable that purpose may be, without having taken and paid as in article 13 of our Constitution (1908) provided.

It is true that some members of this Court, the writer included, have accorded an unusually wide range of discretion to municipal authorities in the zoning of property within the municipal confines (*Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425), yet our majority has never failed to guard, as it should, property owners from such arbitrary local legislation as would gratuitously devote their land to exclusive or near-exclusive municipal purposes (compare the respective opinions of *White* v. *Township of Southfield,* 347 Mich 548, 552, 558).

This is such a case, as the chancellor found. It is guided to proper conclusion by the general principles which were applied in *Spanich, supra.* This means affirmance so far as the writer is concerned, but on suggested condition. I turn now to the latter.

An over-concentration of trailer coach living undoubtedly creates problems of municipal concern such as the superintendent has described. The appealing need for solutional aid stares at us from the appendix, yet the usual extremes of affirmance or reversal appear as marking all limits of the judicial function. But do they? Looking upward and outward at the great horizons of equity, and recalling that the shape of decretal relief should as a rule be formed by the chancellor according to germane conditions and equities as same may be shown to exist at the time of final decree (*Herpolsheimer* v. *Herpolsheimer Company,* 344 Mich 657; *Carlson* v. *Williams,* 348 Mich 165), it would seem that there need be no inexorable choice, now at least, between plaintiff's prayer for specific relief and defendants' too-restrictive ordinance. Why cannot plaintiff and the defendant city consider, together, some possibly midsatisfactory use such as light manufacturing, or retailing, or neighborhood-acceptable commercial endeavor? Why must the permitted use be a this-or-that showdown between temporary life in mobile coaches—or nothing? Does not equity have a duty here, the public interest being at prominent stake? Why not give the parties a chance to answer these questions, in the court below, prior to entry of final decree?

I would remand by special order (see Court Rule No 72, § 1 [1945]) authorizing the city to present, for judicial consideration below if it will, an amendatory ordinance which in so many words relieves plaintiff's tract from the present R-1 designation and provides some less restrictive designation conforming—as the city may be advised—with the require-

ments of constitutional reasonableness; such amend-
atory ordinance to be adopted and submitted to the
successor chancellor within 60 days from the date
of such order. The order should provide that, if
the city elects not to amend and submit as au-
thorized, due report of that fact shall thereupon be
made to this Court by the successor chancellor,
whereupon our decree of affirmance will enter. It
should also provide, for the event of amendment and
submission so authorized, that further disagree-
ment of the parties, if any, should be reported by
the chancellor to this Court with accompanying certi-
fied record of such additional proceedings as may
be ordered and supervised by him.

SMITH, J. (*for reversal*). Once again we are
called upon to rule whether a certain parcel of land
would be better zoned as residential or as a trailer
park.

The plaintiff (sometimes hereafter referred to as
the developer) knowing of the residential restric-
tions, purchased the land on speculation that the
zoning could be changed. Unsuccessful in this be-
fore the legislative body of the city it moves its
petition for legislative relief into the courts.

The usual arguments pro and con are made. On
behalf of the developer, seeking to avoid the zoning,
it is urged that a trailer park is the best use of the
property, that it is unsuitable for private residences,
and hence will remain "dead land," that it would be
difficult, if not impossible, to finance homes here, but
that even if it could be used for homes it is much
more valuable if used as a trailer park. On behalf
of the city it is argued that the best use is not neces-
sarily the most lucrative use, that the property is
suitable for residential construction, that it is
marketable for such purpose, and that financing is
available. The planning director for the city of

Warren testified that the use of the property as a trailer park would create a problem of excess population density, which would result, in turn, in traffic problems, in sewage problems, and in deterioration of health standards. The superintendent of schools testified that an additional trailer park in the area would cause still more overcrowding of schools already crowded and would interfere with plans to remedy the overcrowding. He also pointed out that this school district already contained approximately 1/3 of all of the trailer parks in the entire county and that further development of trailer parks in the area would be highly undesirable.

The developer summarizes the whole problem in these words: "Wouldn't it be better to have high class mobile houses on this parcel than to have cheap substandard homes which would be the only kind that would be practical for this area assuming that even they would be practical?"

We don't know whether it would be better or not. The developer obviously thinks it would. The city (not conceding the "cheap substandard" part) obviously thinks it would not. Each can assign reasons in support of its own point of view. Back and forth the debate has raged, comprehending schools, sewers, densities of population, and all the other factors that must be weighed in reaching decision.

But these are, simply put, no more than problems of municipal government in a rapidly expanding area. It is clear from the foregoing that there is room for an honest difference of opinion here between those who would use land for one purpose and those who would use it for another. We gather from the record that this is not the most desirable residential property. But in any zoning plan the line between areas must be drawn somewhere and we are not the body to move it here or there if there is a debatable question as to where it

should run.  What is involved here, basically, are the merits of the zoning plan itself.  As to such we wrote as follows in *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425, 430, 431, 433:

"We are brought, then, to the merits of the zoning scheme itself.  In view of the frequency with which zoning cases are now appearing before this Court, we deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle:  this Court does not sit as a superzoning commission.  Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits.  With the wisdom or lack of wisdom of the determination we are not concerned.  The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life.  Let us state the proposition as clearly as may be.  It is not our function to approve the ordinance before us as to wisdom or desirability.  For alleged abuses involving such factors the remedy is the ballot box, not the courts.  We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises.  *  *  *

"The question always remains:  As to this property, in this city, under this particular plan (wise or unwise though it may be), can it fairly be said there is not even a debatable question?  If there is, we will not disturb."

Is the best use of this 17-acre parcel a trailer park or a permanent home area?  We will let the Dequindre Development Company, plaintiff herein, supply the answer.  It tells us, in its brief, that "The question as to whether the property is suitable for single residences is largely a question of opinion."

So it is, and that is precisely why we should not substitute our judgment for the judgment of the legislative body of the city. We do not interfere unless there is a clear showing of unconstitutionality. If there is a debatable question, there is no room for judicial intervention. The question is not whether the city's determination is wise or unwise. Unwise it may be (though of this we are not convinced) but wisdom according to our lights is not a criterion for the constitutionality of its determination.

But the trial chancellor added that there was fraud on the part of the city in denying the change in zoning: "That Ordinance No 76 [establishing a zoning classification, R-4, for trailer parks] is a façade behind which defendant conceals a purpose to prohibit trailer parks unlawfully, while pretending to countenance their use under lawful conditions," he held, "is indicated by the fact that even though such ordinance has permitted R-4 zoning classification since September, 1955, a period of nearly 3 years, there is no instance in which either the township board or the city council has approved a rezoning to R-4."

Is this 3-year lapse (if it existed) bad? Should the city have approved rezoning in some prior instance to R-4? In what petitions? Why were these denied? A vacant lot opposite these chambers has not had a trailer park on it for 10 times 3 years. Does this suggest fraud?

The plaintiff, however, relies on no such unsupportable theory. Here is the plaintiff's argument on fraud, as found in its brief, in its entirety:

"Are appellants guilty of bad faith or obstructionism, arbitrary, capricious, or improper action in denying to appellee the rezoning of its 17-acre tract for use as a trailer park?

"The planning commission recommended the re-zoning of this parcel on October 17, 1955. It was not until May 29, 1956, that the appellants' township board acted upon this petition. The stalling of this matter for 7 months and the statement by Mayor Miller that 'I do not care whether any action is done on this for two years and a half' shows conclusively that the court correctly answered this question 'yes.'"

This is skimpy soil for the roots of fraud. We note that the 3-year period of the trial chancellor has now been shrunk by the development company in its own brief to 7 months, and that the city's brief would reduce it even more, in fact, down to 2-1/2 months. Before, however, we can say that even a 7-month delay is so excessive as to justify the strictures visited upon it we should know much more than this record discloses as to the reasons therefor. Is 7 months excessive? Why? What is the average time for passing upon such applications? Is there, in fact, any average time? Or does the time required depend upon the particular circumstances?

Finally, appellee bases its charge of bad faith upon the ground that Mr. Miller, mayor of the city of Warren, stated that "I don't care whether any action is done on this for two years and a half." The city tells us that Mr. Miller's words were by way of contrast to the two months and a half only, that the application had, it asserts, been pending, that he "was already beset with 8 trailer parks within his township, all operating as nonconforming uses," and that he had been subjected to "constant badgering" with respect to this one. It would be better, all might agree, if he had kept his temper despite such circumstances, but I see no more here than irritation, not fraud.

Such are the issues we are bound to get into when we abandon the judicial role and take on the habili-

ments of a superzoning commission. Is the parcel better used for parking or for building? For trailers or for homes? Should the line be here or there? As long as these questions are debatable they are not for us. Our cities must be allowed to chart their own futures without hindrance by us unless there is constitutional impairment, and such I cannot find where the use of land is merely, to employ plaintiff's words, a matter of opinion. We have neither the wisdom nor the constitutional right to usurp the legislative function. I am constrained to observe that we should be slow to equate a public official's sharp retort to fraud, lest we impeach the whole process of government, legislative, executive, and even, some may add, judicial.

The decree should be reversed. No costs, a public question.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.

DETHMERS, C. J. (*for affirmance*). I concur with Mr. Justice BLACK's opinion up to and including the statement, "This means affirmance so far as the writer is concerned * * *".[1] I do not agree with the immediately following words, "but on suggested condition", nor am I in accord with the disposition thereinafter made of the matter.

In consequence, for the reasons stated in the forepart of Mr. Justice BLACK's opinion with which, as above stated, I concur, I favor affirmance of the decree below, with costs to plaintiff.

CARR, KELLY, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

---

[1] See, *ante*, p 642.—REPORTER.