SCHAEFER v. CITY OF EAST DETROIT.
SOBOCINSKI v. SAME.

1. Municipal Corporations—Zoning Ordinance—Residential Use —Superhighway—Use of Nearby Property—Police Power.

City zoning ordinance which limited use of vacant lots 20' to nearly 29' wide fronting on 204' superhighway over which some 29,000 vehicles pass in a day and along which there is much more commercial than residential use of the lots adjacent to those of plaintiffs *held,* unreasonable, confiscatory, and void, where there is no market for the lots as residential properties, *they are indisputably unsuitable for such purposes,* and they were not intended for residential use by the original platters, since the ordinance bears no reasonable relationship to public health, safety, morals, or the general welfare and is not a lawful and permissible exercise of the police powers.

2. Same—Zoning Ordinance—Laches—Prejudice.

Fact that plaintiffs did not attack zoning ordinance for several years after its adoption did not establish they were guilty of laches, where the delay does not appear to have prejudiced defendant city or others.

---

References for Points in Headnotes

[1] 58 Am Jur, Zoning §§ 21, 22, 229.
Zoning: Creation by statute or ordinance of restricted residence districts from which business buildings or multiple residences are excluded. 19 ALR 1395; 33 ALR 287; 38 ALR 1496; 43 ALR 668; 54 ALR 1030; 86 ALR 659; 117 ALR 1117.
[2, 3] 58 Am Jur, Zoning §§ 209, 232.

3. SAME—ZONING ORDINANCE—PARTICIPATION IN CHALLENGE OF VALIDITY—ESTOPPEL.

The fact that some plaintiffs in suit to void a city zoning ordinance had purchased their lots following its adoption did not estop them from participation in challenging its validity.

SMITH, EDWARDS, and SOURIS, JJ., dissenting.

Appeal from Macomb; Noe (Alton H.), J. Submitted January 8, 1960. (Docket Nos. 37, 38, Calendar Nos. 48,074, 48,075.) Decided July 11, 1960.

Bill by Arthur Schaefer, Robert A. Acchione, and others against the City of East Detroit, a municipal corporation, to have zoning ordinance declared void as to their properties. Similar action by Leo T. Sobocinski and others. Cases consolidated for hearing and appeal. Decrees for plaintiffs. Defendant appeals. Affirmed.

*Robert A. Acchione,* for plaintiffs Schaefer and others.

*Lizza & Mulcahy,* for plaintiffs Sobocinski and others.

*Weymouth & Mihelich (Meyer Weisenfeld,* of counsel), for defendant.

DETHMERS, C. J. Plaintiffs brought these actions in chancery, seeking to have defendant's 1948 zoning ordinance, classifying their vacant lots for residential 1, single dwelling purposes, decreed to be unreasonable, unconstitutional, and void as applied thereto, and defendant enjoined from enforcing it against the same. From decrees granting plaintiffs such relief, defendant appeals.

The lots involved are on the west side of and front on Kelly road between Eight Mile and Nine Mile roads in defendant city. All are 100 feet deep, some have a frontage of 20 feet, some 25.21, and two 28.98 feet. All the other lots fronting on Kelly road are similarly narrow. One plaintiff owns but a single lot. The others own 2 or more contiguous lots.

Kelly road is a divided superhighway, 204 feet wide, with 2-lane, 20-foot pavements for traffic in each direction, separated by a wide grass parkway. Traffic on it runs as high as 29,000 vehicles per day. Because of the heavy traffic, a professional traffic engineer consultant, after a study and survey, in a report to defendant city, recommended widening the street from 20 to 33 feet on each side to provide for 3 paved lanes for traffic in each direction.

The narrowness of all lots fronting on Kelly road in the subdivisions involved, as contrasted with the width of the rest of the lots west therefrom, intended for residential use, and the language with respect thereto in many of the deeds conveying title of lots from the original platters to their grantees, clearly indicate the intent and purpose of the common-owner-platters, when platting the properties years before the zoning ordinance, to designate and limit the lots on Kelly road to use for commercial purposes. It is for such purposes that plaintiffs wish to use their lots.

Real-estate experts testified that plaintiffs' properties are unsuitable for residential purposes and that there is no demand for them for such use, but that there is for business purposes. This they attributed, in part, to the proximity of other business places, heavy traffic, and attendant dirt and noise. Their testimony was that if one built a residence there he would not be able to sell it and get his money out of it again. Defendant adduced no testimony in contradiction to any of this, but, on the

contrary, it was confirmed by defendant's own city planner, who testified that the best use of the properties would be business, not residential.

One of the exhibits, a map of the area fronting on Kelly road between Eight Mile and Nine Mile roads, shows that a majority of the frontage has been zoned commercial, and the trial court so found. Alternating stretches, zoned commercial and residential, respectively, are interspersed through each other. Since adoption of the original ordinance, by amendments, which the trial court termed spot-zoning, some properties which had been zoned residential were changed to commercial, part of them, on which gasoline stations, et cetera, have been constructed, being adjacent to some of the properties of plaintiffs involved in this suit. By such amendments defendant has evidenced a recognition of the commercial trend in the area. There are only 4 houses but many businesses, some adjacent to plaintiffs' lots, on the west side of Kelly road between Eight Mile and Nine Mile roads.

In its opinion the trial court stated that the zoning of the area, with an intermixture of business and residential classifications, in some instances even in the same block, gave rise to a serious question as to the proper exercise of the police power. The court found this did not amount to a comprehensive and carefully considered zoning plan, but to spot-zoning, with no uniformity of enforcement, bearing no relationship to promotion of the general welfare.

In view of the character of the superhighway, Kelly road, its heavy traffic conditions with attendant dirt and noise, the zoning of a major portion of the area in question for business rather than residential use, the actual existence of only 4 houses and many businesses, some next to plaintiffs' lots, in the mile between Eight Mile and Nine Mile roads, the inability to get invested money back out of proper-

ties if residences were erected thereon, and the undisputably unsuitable character of the lots for such purpose, we think in point the following from syllabus in *Frendo* v. *Township of Southfield,* 349 Mich 693:

"Township zoning ordinance which limited the use of 18 lots, including 6 owned by plaintiffs, to single-family residence use *held,* unreasonable, confiscatory, and void, where 92% of the similarly situated frontage for 6 miles on main artery of travel is devoted to commercial or industrial uses, there is no market for residences on the thoroughfare, and noise and a heavy volume of traffic make it undesirable and unsuitable for any residential use."

In *Comer* v. *City of Dearborn,* 342 Mich 471, defendant city denied plaintiffs' application for permission to build a motel in an area zoned industrial. Holding the classification unreasonable and invalid, this Court said (pp 475, 476):

"Obviously, it was the intention of the framers of the ordinance, in view of the restrictions imposed with reference to the purposes for which property so zoned may be used, to exclude any use 'for dwelling purposes,' and to permit business and industrial uses only. As bearing on the reasonableness of such restrictions the purposes for which property in the immediate vicinity is now being used require consideration. It appears from the record that in such area there are a number of residences, several business places, and very few industrial enterprises. As the situation now is, the neighborhood may not be regarded as an industrial one. The exhibits in the case clearly support this conclusion.

"In view of the existing situation we do not think that the ordinance, if construed as prohibiting the construction of a motel on plaintiff's property, is reasonable. As so applied the restriction is invalid."

Consideration of the purposes for which a major part of the property in the immediate vicinity is now zoned and being used leads to the conclusion that here, as in *Comer,* the restrictions on plaintiffs' properties are unreasonable and invalid. Under the record we are convinced that imposition of the residential restrictions on plaintiffs' properties fronting on a busy superhighway, some next to business properties, in an area so largely commercial, bears no reasonable relationship to public health, safety, morals, or the general welfare and therefore fails to come within a lawful and permissible exercise of the police powers.

Defendant urges that plaintiffs are guilty of laches for not having attacked the ordinance until it had been in effect for several years. No showing of prejudice to defendant or others by reason of such delay was shown. That defense is, therefore, of no avail to defendant here. *Wright* v. *Brown,* 317 Mich 561; *Kelley* v. *Hoogerhyde,* 314 Mich 37; *Manheim* v. *Urbani,* 318 Mich 552; *Rybinski* v. *Rybinski,* 333 Mich 592.

The fact that some of plaintiffs purchased their lots after the ordinance had been adopted in no wise estops them from challenging its validity. *Robyns* v. *City of Dearborn,* 341 Mich 495.

Decrees affirmed. Costs to plaintiffs.

CARR, KELLY, BLACK, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

SMITH, J. (*dissenting*). Once more we are asked to substitute our judgment for that of the proper legislative body with respect to the use of certain land.

The property involved is on Kelly road in the city of East Detroit, between Eight Mile and Nine Mile roads.

We are told by the city that the plan employed was to permit business establishments adjacent to the 3 heavily traveled east and west highways in the area. These 3 are Eight Mile, Toepfer, and Nine Mile. With this explanation we look at the zoning:

1. Adjacent to Eight Mile are 3 business blocks.

2. Residential then takes over until Toepfer is reached. One block on each side of Toepfer is zoned business.

3. Residential again takes over (except for a medical clinic properly authorized) until the vicinity of Nine Mile road is reached. The business properties start at a line 3-1/2 blocks south of Nine Mile and continue on to Nine Mile.

The medical clinic above referred to stands on 1/4 of the block between Ash and Lister. It was rezoned in 1956 by the proper legislative authorities, for the described use. This change is the only change made in zoning between Eight Mile and Nine Mile roads. Other changes stressed by plaintiffs are in the area between Nine Mile and Ten Mile roads. They relate to subdivisions not involved in the present action. The charge of spot-zoning, so freely made by plaintiffs, is hardly justified by the single amendment between Eight Mile and Nine Mile roads before us.

What we have here, then, is a residential area, broken into by business at the intersection of 3 main traffic arteries.

In seeking to void the zoning it is urged to us that use of property on Kelly road for business purposes is more desirable, as is shown by the heavy traffic thereon, its proximity to the J. L. Hudson Company shopping center, and the fact that residential construction has not kept pace with business construction, and, in fact, that the property is not suitable for residential purposes. The language of the deeds employed indicates no general planning in the area.

This is all legislative argument. Whether the legislative body was wise in permitting business zoning adjacent to its heavily traveled highways, or whether it should have been all business or, possibly, all residential, are questions addressed to its legislative discretion. I find nothing capricious in the decision made. Whether it is wise or unwise is not for this Court, or, indeed, any court.

In ruling upon the wisdom of the community's zoning this Court misconceives its appellate function and misinterprets its relation to the legislative bodies of the communities of our jurisdiction. We held in *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425, that the invalidation of an ordinance on constitutional grounds required more than a fair difference of opinion. "It must appear," we held (p 432), "that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." In *Dequindre Development Co.* v. *Charter Township of Warren,* 359 Mich 634, 641, however, a majority of this Court described *Brae Burn, supra,* as according "an unusually wide range of discretion to municipal authorities in the zoning of property." The majority then disapproved a use of property which even the owner conceded presented a debatable question.

What the *Dequindre Case, supra,* holds is difficult to say. It seems to hold that when a city enacts a zoning ordinance it is exercising (indeed, we accord it) an unusually wide range of discretion. So put, the opinion distorts both the judicial and the legislative function. A parallel statement, and one equally without basis in our system of government, would be for the supreme court of the United States to hold that it accords the congress an unusually wide range of discretion in its legislation respecting the national defense.

Actually, the discretion of the legislative bodies is unlimited, save as to constitutional infringements. There is nothing unusual about this. But the belief that legislative bodies are in truth being accorded by the judiciary "an unusually wide range of discretion" when they merely exercise their normal governmental functions goes far to explain the hodge-podge of our decisions in the zoning field. Because if the zoning seems to us unwise we do not hesitate to strike it down, apparently on the theory that unusually wide though the legislative discretion may be, it is not wide enough to justify this.

On the other hand, if the statement about according cities an unusually wide range of discretion in legislative matters means simply that it is our duty to invalidate legislation not within constitutional bounds, then we would not strike down an ordinance if its classifications were fairly debatable. Yet in *Dequindre, supra,* we did just that.

There is an unhappy parallel in the law for the situation we face. It would be well to remember that when a court finds itself unable to cope with a new development in the law (and zoning is a relatively modern concept) the people do not hesitate to remove it, for all practical purposes, from the courts. With respect to industrial accidents the courts were so completely unable to deal with them on any save archaic concepts that the people, in desperation, vested administrative tribunals (the workmen's compensation commissions) with the judicial functions, softened only by the word "quasi," formerly exercised by the courts. For those who believe, as I do, that our courts are better equipped than administrative tribunals to adjust the differences between our citizens, such transfers of jurisdiction are depressing. It is to be hoped that in this field history need not repeat itself. We are only at the threshold of complex zoning problems. We may take judicial

notice of the official census figures and of the magnitude of the suburban expansions taking place. If we persist in trying to decide from photographs and maps in Lansing, without even the benefit of a visit to the premises, what is the best use of the land in our growing communities, we may very well bring into our State still another administrative tribunal merely to keep our inept and unauthorized hands from meddling with a situation we have neither the knowledge, the skill, nor the jurisdiction to administer. These expanding communities must be permitted to govern themselves. It is possible that their judgment as to land use will not be of the best but there is no constitutional requirement that their judgment must be "correct," whatever that may be. If the separation of powers doctrine has any meaning at all, it tells us that we cannot substitute our judgment for that of the legislative body.

Thus we are expressing no opinion as to whether the separation of business from residential properties at Sprenger street (or at the other lines of division) was wise or unwise. We are expressing no opinion as to whether this 10- or 11-block area largely devoted to residential purposes, between Eight Mile and Nine Mile roads, was good land planning or not. We are expressing no opinion as to whether it is desirable zoning to permit commercial establishments to border on heavily-traveled highways, such as Eight Mile, Toepfer, and Nine Mile. What we are holding is that such uses of property are not merely whimsical. When we thus hold, our judicial function is exhausted.

The decrees should be reversed. No costs, a public question.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.