**WRIGLEY PROPERTIES, INC., et al.,**
(Plaintiffs) Appellants,

v.

**CITY OF LADUE, Missouri, a City of the Fourth Class, et al., (Defendants) Respondents.**

No. 49465.

Supreme Court of Missouri,

Division No. 1.

July 15, 1963.

Granville L. Gamblin, Clayton, for appellants.

J. H. Cunningham, Jr., St. Louis, Willson, Cunningham & McClellan, St. Louis, of counsel, for City of Ladue, Mo., respondent.

HYDE, Judge.

This action, which plaintiffs call declaratory judgment, sought to have the court determine that their ten acres of land zoned as residential should be rezoned as commercial and asked a mandatory injunction for that purpose. At the close of plaintiffs' case, the trial court ordered judgment for defendants and plaintiffs have appealed.

As the basis for our jurisdiction plaintiffs say the refusal to rezone was arbitrary and unreasonable, deprives them of their property without due process of law and denies them of equal protection

of the law in violation of the 14th Amendment to the U. S. Constitution and Sec. 10, Art. I, of the Mo. Constitution, V.A.M.S. However, plaintiffs fail to show how the *construction* of these constitutional provisions is involved (see Sec. 3, Art. V, Mo. Const.) making no claim that they did not have notice of the proceedings (which in fact they commenced) and full opportunity to be heard. Moreover plaintiffs make no claim of unconstitutionality of any zoning statutes or ordinances and their so-called constitutional issue amounts to nothing more than a contention of incorrect application of zoning laws by the city. See State ex rel. Doniphan Telephone Co. v. Public Service Commission of Missouri, Mo., 369 S.W.2d 572; Goodson v. City of Ferguson, Mo.Sup., 339 S.W.2d 841; McClard v. Morrison, Mo.Sup., 273 S.W.2d 225. However, we have decided we do have jurisdiction because of the amount in dispute. Plaintiffs allege "that the land described in this petition is, and has always been unimproved ground, and for residential purposes the reasonable and fair market value thereof would approximate $50,000; and that its reasonable and fair market value for commercial purposes would approximate $450,000." Thus the value of the relief sought is claimed to be in excess of our jurisdictional amount of $15,000. Sec. 3, Art. V, Const.; Sec. 477.-040, RSMo, V.A.M.S.; see Chemical Bank & Trust Co. v. Anheuser-Busch, Inc., 360 Mo. 877, 231 S.W.2d 165; Superior Concrete Accessories v. Kemper, Mo.Sup., 284 S.W.2d 482, and cases cited.

The 10-acre tract, sought to be rezoned, is the east 10 acres of a 14-acre tract owned by plaintiff Wrigley Properties, Inc. (hereinafter called Wrigley) which in 1961 had made a contract for its sale to plaintiff Taylor Gamblin for $382,021.20, subject to obtaining rezoning from residential to commercial. Gamblin desired to build a large shopping center building on this 10 acres with paved parking space for about 800 cars, at an estimated cost of $1,-500,000.00. Wrigley had bought the 14

acres before 1958 for $300,000.00 and was using the west 4 acres (the west 300 feet) for a supermarket and a parking space. The 14-acre tract is at the western limits of the City of Ladue at the intersection of Lindbergh Boulevard (on the west) and Clayton Road (on the south) with U. S. Highway 40, an express highway, on the north. Across the east side, there is a graded bank, east of which is the Fieldcrest residential subdivision on somewhat higher ground. On the north side of the highway is the Salem Methodist Church. Also nearby on the north side of the highway is Ladue High School.

When Wrigley bought the entire 14 acres, the west 250 feet was zoned commercial and upon its petition this was extended 50 feet farther east. The commercial zone on the south side of Clayton Road likewise extends 300 feet east of Lindbergh. (It is occupied by a service station and a restaurant with a branch of the St. Louis County Public Library to the south.) From that point east the land on the south side of Clayton Road (like the land on the north side) is zoned residential along and beyond the 10-acre tract involved, with the requirement of 30,000 square feet per family. This was true of the land adjoining the 10-acre tract on the east, as well as on the south side of Clayton Road and on the north side of Highway 40. The present value of the 10-acre tract, if zoned commercial, would be $440,000 to $450,000 according to plaintiffs' evidence. (The prospective value of the 10-acre tract if 12 houses were constructed on it was estimated at $360,000.) Plaintiffs offered to give a strip of the south side of their land for an additional westbound lane of Clayton Road if rezoned as they requested. The 10-acre tract has been in Ladue since 1947 when its boundaries were extended to Lindbergh Boulevard and has always been zoned residential.

All of the testimony was produced by plaintiffs and the witnesses included the mayor and city clerk of Ladue. The City Zoning and Planning Commission recom-

mended against rezoning because (1) insufficient major changes to justify it; (2) adequate area for commercial development to serve city's future population with still vacant commercial areas along Clayton Road; (3) proposed 850 parking spaces would add to existing traffic congestion along Clayton Road even though an additional traffic lane was provided; (4) adverse effect upon nearby and adjacent residential development; (5) rezoning area would invite requests for additional zoning changes, particularly along Lindbergh, not needed to serve Ladue residents. There was testimony to support these findings and also that paving the area for parking would increase flow of water after rains so as to adversely affect nearby residential subdivisions. These also were the reasons of the mayor and city council in refusing plaintiffs' application for rezoning. The history of Ladue and a description of its zoning will be found in our opinion in Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771.

Plaintiffs' principal argument is that the growth and development of the region outside Ladue to the west, southwest and northwest has been so great and has so completely changed conditions in the area that rezoning of the ten acres from residential to commercial is necessary for the physical and economic needs of the area and therefore refusal to rezone is arbitrary and unreasonable. Other cities and towns adjoining Ladue on the north, west and south are Olivette, Creve Coeur, Frontenac, Huntleigh and Warson Woods, with several other towns just beyond them; and there was evidence that the planned shopping center would serve all these municipalities. However, it also appeared that on the southwest corner of the intersection of Clayton Road and Lindbergh, in Frontenac, there was a tract reaching 500 feet west on Clayton Road and 1500 feet south along Lindbergh, undeveloped and available for commercial development; and that there were other such open areas in

Frontenac. (A new Shriners Hospital was being built south of the 1500-foot tract on Lindbergh on the west side of Lindbergh and to the north of Clayton Road, in Frontenac, there was a furniture store and a motel.) The Planning Director of St. Louis County, who testified concerning the development of the area and stated the view that a neighborhood shopping center was needed in the area, also said that residential development of the 10-acre tract would be a reasonable use, particularly some type of high density residential use (multiple or apartment) for at least part of it. It also appeared that there had been people wanting to buy it for residential development; and the Assistant County Planning Director said residential development would be a reasonable use.

The St. Louis County Planning Director and his assistant testified that they had prepared a preliminary land use plan for the entire county; that they considered a reasonable use of the 10-acre tract would be commercial; and that the entire area both in and beyond Ladue was increasing in population and could be served by a shopping center there. They also expressed the view that this would have no detrimental effect on adjacent residential districts; and that it would be better to have the shopping center there next to the supermarket rather than on the southwest corner of the intersection (then unimproved and zoned commercial) which would require constant back-and-forth movement of people across Lindbergh to do normal shopping. These views were "from the standpoint of overall planning of St. Louis County rather than from the planning of an individual municipality." An officer of a real estate appraisal and planning firm testified that the shopping center would provide service to a large trade area which then was rather devoid of major retail buying centers; that this was one of the major intersections in the county; that home values in the immediate vicinity would average around $35,000; that the center would serve a community overlapping city

boundaries; that the estimated number of families in the trade area was 4500, which would increase to 6000 in the next eight years; and that 1000 of this increase would be west of Lindbergh. He also estimated the sales potential of the center at $30,000,-000.00 with an increase to $40,000,000.00 by 1970, with two-thirds of the increase coming from west of Lindbergh; and stated his opinion that a shopping center would be more appropriate to the entire area than residential development and that it would not affect values of existing residential property. Other witnesses with experience in the real estate business affirmed the need of the whole area for such a shopping center and had the view that it would not be detrimental to existing residential areas in Ladue; and also expressed the opinion that present conditions around the intersection, traffic, lights all night, etc., would deter development of the 10-acre tract for residential purposes. Therefore, they considered its best use to be commercial. However, it was admitted that there were fine homes in Ladue in subdivisions that come right out to Lindbergh and the area restricted to three acre lots, containing the finest residences, is to the south and southeast of the 10-acre tract, also coming out to Lindbergh.

The trial court found that plaintiffs "made a prima facie case as to the nature and needs of the entire community, but they have failed in establishing that these needs are not in conflict with the social, economic and physical conditions within the community of Ladue."

▄▄▄ Zoning is an exercise of the police power and "the rule is that, if the question as to whether or not the legislation is unreasonable or arbitrary or an unequal exercise of power is fairly debatable, the legislation must be upheld as valid", Schell v. Kansas City, 360 Mo. 27, 226 S.W.2d 718, 719, and cases cited; Flora Realty & Investment Co. v. City of Ladue, supra, 246 S.W.2d 1. c. 777. This rule likewise must apply to refusal of an application to rezone. "[U]nder some circumstances the refusal to rezone property from residential to business use may be arbitrary and unreasonable." 101 C.J.S. Zoning § 97, p. 851. The following cases cited in C.J.S. have held refusal to rezone arbitrary and unreasonable: Del Buono v. Board of Zoning Appeals of Town of Stratford, 143 Conn. 673, 124 A.2d 915 (conceded that land could not serve for residential purposes until extensive piling, fill, drainage and retaining walls were put in at great expense to owner; surrounding neighborhood zoned for business and industry); Suffield Heights Corporation v. Town Planning Commission of Town of Manchester, 144 Conn. 425, 133 A.2d 612 (uncontradicted testimony that land was unsuitable for residential use and entirely unfit for any other use but business); Hamilton Company v. Louisville & Jefferson County Planning and Zoning Commission (Ky.), 287 S.W.2d 434 (commercial structures adjoining tract and on opposite side of road and land not suitable for residential purposes; idle and isolated property); Hoffman v. Mayor and City Council of Baltimore, 197 Md. 294, 79 A.2d 367 (general area industrial and building residences on lots involved would be unwise and wasteful; evidence indicated no use for residential purposes ever); Dequindre Development Co. v. Charter Township of Warren, 359 Mich. 634, 103 N.W.2d 600 (part of tract rezoned industrial, rest left residential against recommendation of zoning commission; substandard, blighted area, owner unable to obtain purchaser for residential use, see also Knibbe v. City of Warren, 363 Mich. 283, 109 N.W.2d 766; City of Hattiesburg v. Pittman, 233 Miss. 544, 102 So.2d 352 (lots so reduced in depth by construction of highway by-pass as to make them unsuitable for residential construction; other lots adjacent and nearby rezoned commercial); Bianchi v. Morey, 124 N.J.L. 258, 11 A.2d 405 (triangular lot on a heavy traffic through highway opposite commercial greenhouse, adjoining lumber yard, near night club, with stores and gas stations in vicinity and factories nearby.)

The following cases have held refusal to rezone reasonable: County Council for Montgomery County v. Gendleman, 227 Md. 491, 177 A.2d 687 (county planning agency recommended change and one lot in block had been rezoned; immediate neighborhood predominately residential); Highland Village Land Co. v. City of Jackson, 243 Miss. 34, 137 So.2d 549 (land zoned residential by county annexed to city; found change would depreciate value of neighborhood residential property); Urmston v. City of North College Hill, 114 Ohio App. 213, 175 N.E.2d 203, app. dism. 172 Ohio St. 1126, 178 N.E.2d 36 (residential property east and west although property immediately south was in business zone and property immediately north had nonconforming business use; test is best interest of entire district rather than adaptability and suitability of particular property); Marshall v. City of West University Place (Tex.Civ.App.), 351 S.W.2d 257 (claimed greater population, increased traffic on boulevard and business use on other side). See also Metzenbaum, Law of Zoning, p. 1125; Yokley, Zoning Law and Practice, Sec. 68; Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616; Gould v. Kansas City, Mo. Sup., 316 S.W.2d 571.

Counties have zoning authority only as to their unincorporated area (see Chap. 64, statutory references are to RSMo and V.A.M.S.) and it is not claimed that St. Louis County has any zoning authority within cities. Zoning authority of Ladue comes from Secs. 89.010–89.140 applicable to all cities, towns and villages, and the purposes of such zoning are stated in Sec. 89.040. Some of those applicable here are to lessen congestion in the streets, to prevent overcrowding of land and to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. All this authority and these purposes are at least primarily related to conditions within a city. Plaintiffs cite Duffcon Concrete Products

v. Cresskill, 1 N.J. 509, 64 A.2d 347, 9 A.L.R.2d 678, cited in Flora Realty & Investment Co. v. City of Ladue, supra, 246 S.W.2d l. c. 778, in which it was said: "What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously. The effective development of a region should not and cannot be made to depend upon the adventitious location of municipal boundaries, often prescribed decades or even centuries ago, and based in many instances on considerations of geography, of commerce, or of politics that are no longer significant with respect to zoning." However, it was held that the municipality involved in the Duffcon case could entirely exclude heavy industrial use because of the residential character of the municipality, the suitability of its location for residential development and availability of another nearby area for industrial purposes, saying: "[T]he power of the municipality to restrict its territory to residential purposes with ample provision for such small businesses, trades and light industries as are needed to serve the residents, is clear." A judgment that the municipality could not exclude heavy industry was reversed.

■ As shown by our former decision, Flora Realty & Investment Co. v. City of Ladue, supra, Ladue was organized in 1936 (extended in 1947) "in the path of the better residence development" of the St. Louis metropolitan area (246 S.W.2d l. c. 775), representing "about the finest residential development of the entire metropolitan area," and containing "only a limited amount of commercial and industrial development." The evidence shows that it has been kept that way and also that most of the development in the entire area in the cities and towns adjoining La-

due has been and is predicted to be residential. In fact plaintiffs' contention is that the rezoning sought for the proposed shopping center is necessary to serve new residential areas developing beyond Ladue. Moreover, as we also said in the Flora Realty & Investment Co. case (246 S.W.2d l. c. 779), "The fact that loss will be sustained through depreciation, if the ordinance is valid, is not controlling"; and we also add this is true if refusal to rezone prevents sale at a profit if rezoning is a fairly debatable question.

We conclude from the evidence in this case, which includes zoning and other maps, contracts, plan of proposed shopping center and other documents, that the question of whether the 10-acre tract should be rezoned from residential to commercial was shown to be fairly debatable and therefore the determination by the city council should not be set aside by the courts. Sufficient reasons which the council could have found for reaching its decision are that the proposed use as a shopping center appears to be more for the benefit of other cities and towns than for the benefit of Ladue; that there is more than ample space for such a shopping center on the opposite corner of the intersection (southwest corner) in Frontenac already zoned commercial; that traffic around present adjacent built-up residential districts would be increased, flooding conditions from rains aggravated and values adversely affected; that all of Ladue adjoining Lindbergh, except the 300-foot areas on each side of the Clayton Road intersection and one smaller tract to the north where the Missouri Pacific Railroad crosses, is zoned residential with many fine homes constructed; that there was still vacant area along Clayton Road in Ladue, zoned commercial, sufficient to serve the city's population; and that Ladue still is a fine residential community with parks, public and private schools, country clubs and residential growth prospects making residential use of the 10-acre tract involved reasonable. In short, a change of conditions in Ladue which would require such a change is not shown and it does not sufficiently appear that any need therefor of the entire region cannot be provided outside of Ladue but instead it reasonably could be found that there are available nearby larger commercially zoned areas to do so.

The judgment is affirmed.

All concur.